**James P. MULLINS, Appellant,**

v.

**DIRECTOR OF REVENUE STATE OF MISSOURI, Respondent.**

No. 71064.

Missouri Court of Appeals,
Eastern District,
Division One.

June 10, 1997.

Robert W. Miller, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Special Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

DOWD, Presiding Judge.

James P. Mullins (Driver) appeals from the trial court's judgment sustaining the Director of Revenue's (Director) order suspending his driving privileges for driving while intoxicated, § 302.505, RSMo 1994.[1] Driver alleges the trial court erred in admitting breath test results into evidence without proper foundation and allowing opinion testimony from an unqualified witness. We affirm.[2]

## I. Background

On the evening of October 19, 1995, Driver was stopped by two officers from the St. Louis Police Department. After failing a field sobriety test, he was placed under arrest and taken to a mobile blood alcohol testing unit, or BAT Mobile. He submitted to a breath analysis test that found his blood alcohol content to be .10 percent.

The Director suspended Driver's driving privileges. Driver filed for an administrative review, and the Director sustained the suspension. Driver petitioned for a trial de novo in the circuit court, and the court sustained the Director's order suspending Driver's driving privileges. This appeal follows.

■ This court must affirm the trial court's judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

## II. Foundation: Maintenance Check

19 CSR 25–30.031(3) requires that a maintenance check be performed on a breath analyzer every thirty-five days, and after

"[t]he instrument has been put in a new location." The breath analyzer used to test Driver's BAC was located inside a mobile testing vehicle, or BAT Mobile, which was frequently moved to different locations throughout the city between regular thirty-five day maintenance checks. The instrument, however, was never moved from its specific location within the vehicle. A new maintenance check was not performed in between the time the BAT Mobile was last moved and the time the breath test was performed on Driver. The question before us is whether an instrument is "put in a new location" by moving the vehicle in which it is located from place to place, even though the instrument itself never moves from its location within the vehicle.

■ In order to lay the proper foundation for admission of blood alcohol test results into evidence, the Director must show that (1) the test was performed by following the approved techniques and methods of the Department of Health; (2) the operator held a valid permit; and (3) the equipment and devices were approved by the Department. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo.banc 1992). The only element at issue here is whether approved techniques and methods were used. In construing legislation, this court considers the words used in their plain and ordinary meaning. *Walsworth Pub. Co. v. Director of Revenue*, 935 S.W.2d 39, 40 (Mo.banc 1996). In interpreting administrative rules, the same principles of construction are used. *See Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App. W.D.1996). Further, the language of the rule is reviewed in its entirety. *Willard v. Red Lobster*, 926 S.W.2d 550, 553 (Mo.App. E.D.1996).

The portion of 19 CSR 25–30.031 requiring maintenance checks on breath analyzers reads as follows:

A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days.... In addition,

---

1. All statutory references are to RSMo 1994.

2. Driver's motion for attorney's fees, taken with the case, is denied.

maintenance checks shall be completed when—

(A) A new instrument is placed into service;

(B) *The instrument has been put in a new location;* or

(C) The instrument has been repaired or calibrated.

(emphasis added)

Driver argues that the plain meaning of the words "put in a new location" means that every time the BAT Mobile itself moved to a new location, the instrument actually moved as well, requiring a maintenance check. The Director, on the other hand, argues that the actual location of the instrument never changed. She points to testimony by the police officer in charge of the BAT Mobile. He stated that, though the vehicle moved, the instrument remained in the exact same location within the vehicle and that it was never disconnected from its power source.

■ We find that the plain language of the rule is intended to mean that a new maintenance check must be performed only after the instrument is removed from its resting place and physically put into a new resting place. To adopt Driver's interpretation would create an absurd result, requiring a new maintenance check and calibration every single time the BAT Mobile takes to the road. We find no language in the rule requiring such added expense of time and money. Driver further argues that "turning, swaying, jarring, bumping and potholing" all upset the machine and could effect the results. Driver fails, however, to produce any evidence that such activity ever occurred, or that it, in fact, affected the results. Point denied.

### III. Foundation: Approved Solution

19 CSR 25–30.050 lists the breath analyzers, chemical reagents, and standards which are approved by the Department of Health for testing blood alcohol content from expired (alveolar) air. Further, it requires that standard simulator solutions used to verify and calibrate breath analyzers shall be certified by the manufacturer of the solution. The standard simulator solution used in the

maintenance check and calibration of the breath analyzer in the instant case was not a material listed for use in the regulation. The question before us is whether the "approved materials" listed in the regulation refer to the same materials used to test expired air as those used to calibrate and maintain the machine.

■ Again, we are dealing with a question of whether approved techniques and methods are used and as such, we review the plain language of the rule in its entirety. *Walsworth,* 935 S.W.2d at 40; and *Woolridge,* 915 S.W.2d at 378. Initially, we note that the regulation changed in between the time Driver's arrest and the time of trial. We review this question under the revised regulation because it is procedural only and is, therefore, applied retrospectively. *See Eckhoff v. Director of Revenue,* 745 S.W.2d 815 (Mo. App. W.D.1988) and *Director of Revenue v. Martin,* 752 S.W.2d 453 (Mo.App. W.D.1988).

■ The purpose statement for 19 CSR 25–30.050 reads:

This rule enumerates those breath analyzers, chemical reagents and standards which are approved by the Department of Health for the determination of the alcoholic content of blood from a sample of expired (alveolar) air. The chemical composition and tolerances for the test ampoules are also defined.

Section (1) lists "Approved breath analyzers," § (2) lists "Approved chemical test ampoules," and § (3) lists the "Composition and tolerances" for chemical test ampoules. Section (4) uses the following language:

Approved standard simulator solutions used to verify and calibrate breath analyzers shall be certified by the manufacturer of that solution, and evidence of such certification shall accompany the maintenance report.

Driver argues that the term "approved standard simulator solutions" refers to the list of approved manufacturers in § (2), and that the only materials which can be used to verify and calibrate breath analyzers are to be found there. This argument, however, fails to read the regulation as a whole. The purpose clearly states that the regulation "enumerates those breath analyzers, chemi-

cal reagents and standards which are approved" for testing *"expired (alveolar) air."* (emphasis added) 19 CSR 25–30.050. The "standard simulator solutions used to verify and calibrate breath analyzers" do not work on expired air. Verification and calibration are automated processes. Therefore, § (4) does not create a requirement to use an enumerated material. It merely creates a requirement that the material used be certified by its manufacturer and that evidence of that certification accompany the maintenance report.[3] The officer assigned to the machine used in the instant case testified that he used a certified solution to verify and calibrate the machine. Driver presents no contrary evidence. Point denied.

### IV. Opinion Testimony

In his final point, Driver alleges the trial court erred by allowing an officer to testify on legal requirements for conducting maintenance checks on breath analyzers under 19 CSR 25–30.031 and .050. We have reviewed this point and find it to be without merit. Rule 84.16(b).

The judgment of the trial court is affirmed.

REINHARD, and GAERTNER, JJ., concur.

---

3. There is no evidence presented that evidence of certification was attached to the maintenance report in the instant case. Driver, however, did not make a timely objection at trial, and makes no such argument here. Therefore, the issue is deemed waived.