**Jesse E. POAGE, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. 70913.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 27, 1997.

Mark S. Wasinger, Hannibal, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Special Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

The Director of Revenue (Director) appeals from an order reinstating driving privileges to Jesse E. Poage (Driver). We reverse and remand.

## I.  Background

On October 31, 1995, Trooper observed Driver's vehicle twice weave from its lane onto the shoulder and over the centerline. Trooper stopped Driver and noticed a strong odor of an intoxicating beverage on his breath. Driver's speech was slurred and mumbled, his eyes were bloodshot and glassy, and he admitted to drinking four or five beers. Trooper put Driver through several roadside sobriety tests, which Driver failed. This caused Trooper to believe Driver was intoxicated. He placed Driver under arrest and took him to the sheriff's office for a breath test. The results showed Driver's blood alcohol content (BAC) to be .17%.

At trial, the Director introduced, inter alia, the arrest report and a maintenance report, dated "9–28–95," for the instrument used to test Driver's BAC. It reported results meeting department of health (DOH) specifications while using a .10% standard.[1]

Driver also introduced a set of maintenance reports. One set, dated "9–26–95," found the instrument to be out of compliance while using a .04% standard. This maintenance check was performed just two days before the .10% maintenance check. The other set, dated "2–04–96," some four months after Driver's test, showed the machine to be out of compliance while using a .10% standard.

The trial court issued a judgment ruling in favor of Driver. The judgment does not include findings of fact or conclusions of law. This appeal follows.

## II.  Sufficiency of the Evidence

The Director alleges the trial court erred in setting aside the Driver's suspension because the evidence shows probable cause to arrest for driving while intoxicated, and a BAC level greater than or equal to .10%. This court must affirm the trial court's judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

In a license suspension proceeding, the Director has the burden to show, by a preponderance of the evidence, that (1) the officer had probable cause to arrest the petitioner for driving while intoxicated; and (2) at the time of arrest, petitioner's BAC was .10% or greater. *See* § 302.505, RSMo

---

1. The instrument, a DataMaster, can be used to test BAC levels for DWI under § 302.505, where driving a motor vehicle with a BAC of .10% or greater results in a revocation; and § 302.780, where driving a commercial motor vehicle with a BAC of .04% or greater is unlawful.

1994 [2]; *Jurgiel v. Director of Revenue,* 937 S.W.2d 397, 398 (Mo.App. E.D.1997); *Buckley v. Director of Revenue,* 864 S.W.2d 394, 395 (Mo.App. E.D.1993).

■ Probable cause exists when circumstances and facts would warrant a person of reasonable caution to believe an offense has been committed. *Oughton v. Director of Revenue,* 916 S.W.2d 462, 464 (Mo.App. E.D. 1996). The determination of whether an officer has probable cause to make an arrest must be made in relation to circumstances as they appeared to a prudent, cautious and trained police officer. *Id.* "The type of facts needed to determine probable cause are found in the definition of the substantive offense and in case law dealing with the sufficiency of the evidence to convict of the substantive offense." *Id.* quoting *Wilcox v. Director of Revenue,* 842 S.W.2d 240, 242 (Mo.App. W.D.1992).

■ In the instant case, Trooper observed Driver's vehicle swerve from the centerline to the shoulder on two occasions. When he pulled Driver over, Trooper observed a strong odor of alcohol on Driver's breath and Driver admitted to drinking "four or five beers." Finally, Driver failed a series of roadside sobriety tests, including reciting the alphabet, the walk-and-turn test, the one leg stand test, and the gaze nystagmus test. Based on these facts, the Director has shown probable cause for arrest.

■ Next, the Director must show that Driver's BAC was .10% or greater. Here, the Director submitted test results and affidavits under the business records exception to the hearsay rule. §§ 490.680 and .692. In order to lay the proper foundation for admission of blood alcohol test results into evidence, the Director must show that (1) the test was performed by following the approved techniques and methods of the Department of Health; (2) the operator held a valid permit; and (3) the equipment and devices were approved by the Department. *Sellenriek v. Director of Revenue,* 826 S.W.2d 338, 340–41 (Mo.banc 1992).

■ The only point of contention before us is whether the test was performed by approved techniques and methods. The Director introduced an operational checklist and a test result strip, each properly completed, showing Driver with a BAC of .17%. The Director also attached a maintenance report, dated "9–28–95," showing the instrument's readings of a .10% "motor vehicle" standard simulator solution were within DOH specifications and that the instrument was functioning properly when Driver was tested.

Driver claims the test results are unreliable because the machine was not performing accurately. 19 CSR 25–30.031 requires that a maintenance check be performed at least once every thirty-five days. Subsection (7) of that regulation requires that each maintenance check on a DataMaster instrument must be performed on a separate form. The Director's 9–28–95 maintenance report meets these requirements.

Driver, however, introduced two maintenance reports which he claims show that the instrument used was not functioning within DOH specifications. The first set, dated "9–26–95," is a maintenance report showing a test on the instrument using a .04% "commercial motor vehicle" standard. According to the form, only one standard is to be used per maintenance report. When using a .04% standard, the instrument must read between .038% and .042%. The 9–26–95 results did not meet these parameters. The form also requires the inspector to list any alterations or modifications made to the instrument to make it operate satisfactorily, and does not allow the instrument to be used until it is operating correctly. In response the inspector wrote, "Instrument is reading low on .040% standard scale, calibrate instrument up to read between .038% and .042%." Driver claims that without evidence of these actions accompanying the report, the instrument could not be used to test any breath samples. He fails, however, to cite any authority that such documentation is required. Further, he fails to cite authority that a poor result using a .04% "commercial motor vehicle" standard in any way disqualifies the instrument from

**2.** All statutory references are to RSMo 1994.

analyzing results under § 302.505, which requires accurate results using .10% "motor vehicle" standard. In the instant case, the instrument was used to test Driver's BAC under § 302.505. The results on the 9–28–95 maintenance report, using the .10% standard, meet DOH standards.

The second maintenance report relied on by Driver is dated 2–04–96. This report was completed four months after Driver's arrest. It was not within the thirty-five day testing period surrounding Driver's arrest and is, therefore, irrelevant. 19 CSR 25–30.031(3).

We find that the Director presented substantial evidence of probable cause for arrest and BAC .10% or greater. Therefore, we reverse the trial court's judgment and remand with instructions to reinstate the Director's suspension of Driver's driving privileges.

GERALD M. SMITH, P.J., and GRIMM, J., concur.