Teresa Louise GREEN, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent–Appellant.

No. 21438.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for Appellant.

Dennis P. Wilson, Dexter, for Respondent.

SHRUM, Judge.

After administrative hearing, the Director of Revenue (Director) suspended the driving privileges of Teresa Louise Green. Director acted on the basis of reports that Green had driven a motor vehicle while intoxicated. Green filed a petition for trial de novo by the circuit court as allowed by § 302.535, RSMo 1994. The trial court reinstated Green's

driving privileges. This appeal by Director followed.

The issue is whether the trial court correctly excluded certain evidence concerning the breath analyzer. We answer, "No." We reverse and remand for a new trial.

## FACTS

The facts in this case are undisputed.

On May 4, 1996, Green was stopped at a checkpoint in Stoddard County, Missouri. At this stop, Trooper Stoelting of the Missouri State Highway Patrol noticed an "odor of intoxicants" emanating from Green. Trooper Stoelting had Green perform a series of field sobriety tests. After these tests, Trooper Stoelting concluded that Green was intoxicated and placed her under arrest for driving while intoxicated.

After she was informed of her rights under Missouri's Implied Consent Law and her Miranda rights, Green consented to take a breath analyzer test. Green performed the breath analyzer test. Based on results of the breath analyzer test, Green's driving privileges were suspended. An administrative hearing was held pursuant to § 302.530, RSMo Supp.1996. The suspension of Green's driving privileges was upheld. Green petitioned for a trial de novo.

At trial, Director elicited testimony from Trooper Stoelting. However, the results of the breath analyzer test were not introduced during Trooper Stoelting's testimony. Director next called Trooper Scott Rawson who performed a maintenance check on the breath analyzer machine in question. During Trooper Rawson's testimony, Director attempted to introduce evidence regarding the maintenance of the breath analyzer. Director's attempts were met with Green's objections on the grounds of lack of foundation. Specifically, Green objected because at the time of the trial de novo she had only received in discovery a copy of the Data Master maintenance report and not several attachments thereto. Green also had not received from Director a copy of the certificate of analysis for the test solution used on the breath analyzer. The trial court sustained Green's objections.

Without the maintenance report with attachments and the certificate of analysis in evidence, Director was unable to lay a proper foundation for Trooper Rawson's testimony as to the proper functioning of the breath analyzer. Consequently, Director could not lay a proper foundation for the blood alcohol test report and the Data Master evidence ticket proving Green's blood alcohol level. Director, however, made offers of proof regarding the maintenance report, the blood alcohol test report, the Data Master evidence ticket, and the certificate of analysis for the test solution.

In its judgment, the trial court reinstated Green's driving privileges. This appeal followed.

## DISCUSSION AND DECISION

■ Director's sole point on appeal charges the trial court erred in reinstating Green's driving privileges because the test results not allowed into evidence were admissible. Director asserts, *inter alia,* that Green did not file a request for production under Rule 58.01 for the trial de novo. Further, Director contends that she produced all documents she was required to produce.

Green filed a request to produce documents before her administrative hearing; however, she failed to request production of documents after filing her petition for trial de novo as required under Rule 58.01. Thus, the grounds for Green's objection to the introduction of the Data Master maintenance report, the blood alcohol test report, the Data Master evidence ticket, and the certificate of analysis did not exist.

■ At trial, Director argued that she did not have possession of the documents about which Green complained. The Highway Patrol had possession of the documents. Director properly disclosed the maintenance report to Green. Director was not required to disgorge documents that were not in her possession. *Arth v. Director of Revenue,* 722 S.W.2d 606, 607 (Mo.banc 1987); *Bedell v. Director of Revenue,* 935 S.W.2d 94, 96 (Mo. App.1996); *Lazzari v. Director of Revenue,* 851 S.W.2d 68, 70–71 (Mo.App.1993). Thus, the trial court erroneously applied the law

when it sustained Green's objection to the admission of the maintenance report, the blood alcohol test report, the Data Master evidence ticket, and the certificate of analysis.

■ Since the trial court erroneously applied the law, the judgment of the trial court should be reversed. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo.banc 1976). However, in her response to Director's appeal, Green contends that the ruling of the trial court was correct under another theory, and should be affirmed. Specifically, Green argues that Director did not show that an "approved standard simulator solution" was "used to verify and calibrate" the breath analyzer. *See* 19 CSR 25–30.050(4). Green points to *Declue v. Director of Revenue,* 945 S.W.2d 684, 685–686 (Mo.App.1997) for the proposition that without evidence that an "approved standard simulator solution" was utilized to maintain the breath analyzer, no foundation exists for the admission of the breath analyzer test results.

Director, in her reply brief, responds to Green's argument by citing *Mullins v. Director of Revenue,* 946 S.W.2d 770, 773 (Mo. App.1997) for the proposition that testimony by Trooper Rawson that he used a certified solution was sufficient evidence that an "approved standard simulator solution" was used.

19 CSR 25–30.050(4) states the following:

"Approved standard simulator solutions used to verify and calibrate breath analyzers shall be certified by the manufacturer of that solution, and evidence of such certification shall accompany the maintenance report."

In *Mullins,* the Eastern District found this regulation creates a requirement that simulator solutions be certified by their manufacturer and the evidence of that certification must accompany the required maintenance report. 946 S.W.2d at 773.

In this case, Trooper Rawson testified as follows:

"[Counsel for Director] Okay. And on the face of the maintenance report, did you indicate what type of solution you used?

"[Trooper Rawson] Yes ma'am. RepCo Solution Lot No. 95004, Bottle No. 335.

. . . .

"[Counsel for Director] Now, I'm going to show you what's marked as Defendant's Exhibit D. Could you identify that for me?

"[Trooper Rawson] Yes ma'am. This is a certificate of analysis. It comes from the company we get the solution from, stating that the lot number in question was checked by them and should read a .10 on the breath test."

Green's objections centered on a lack of foundation for Rawson's opinion testimony that the breath analyzer was working within specification. Green expanded on her objection noting that the attachments to the maintenance report were not made available to her in discovery. Green did not object to Rawson's testimony regarding what solution he recorded on the form, nor the existence of a certificate of analysis regarding that solution.

In *Mullins,* the Eastern District found that an officer's unchallenged testimony that he used a certified solution was sufficient to establish that a certified solution was utilized. 946 S.W.2d at 773. Based on *Mullins,* we find that Trooper Rawson's testimony regarding what solution he used and the existence of a certificate was sufficient to establish that a proper test solution was used to maintain the breath analyzer in question. Thus, we cannot uphold the trial court's judgment on the alternative theory as urged by Green.

Director's point is well taken. The judgment of the trial court is reversed and remanded.

MONTGOMERY, C.J., and BARNEY, J., concur.