Scott A. TATE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. 73554.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 24, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buckheim, Jefferson City, MO, for appellant.

Jesse W. Ullom, Joy D. McMillen, Chesterfield, MO, for respondent.

ROBERT G. DOWD, Jr., Chief Judge.

The Director of Revenue (Director) appeals the trial court's judgment reinstating Scott A. Tate's (Tate) driving privileges. The trial court refused to admit the breathalyzer results and the certificate of analysis into evidence based on a hearsay objection to the certificate. Director contends the trial court erred in (1) not admitting into evidence the results of Tate's breath test because the certificate of analysis for the solution used to calibrate the breath analyzer was not hearsay and was admissible; and (2) setting aside the suspension of Tate's driving privileges because the decision was against the weight of the evidence. We reverse and remand.

On April 30, 1997, at approximately 1:25 a.m., a St. Louis County police officer observed a vehicle driven by Tate weaving in and out the traffic lane. The officer stopped Tate and "noticed a strong odor of an alcoholic beverage on his breath when he spoke." The officer also noticed that Tate's eyes were bloodshot. The officer looked inside and saw

a full, open beer can in the vehicle. The officer administered three field sobriety tests. The officer concluded Tate was intoxicated and arrested him for driving while intoxicated. At the police station, Tate consented to a breath test. The test showed a blood alcohol content of .184%. Director suspended Tate's driving privileges pursuant to Section 302.505, RSMo 1994, for driving with a blood alcohol concentration in excess of .10%.

Tate filed a petition for a trial de novo pursuant to Section 302 .535, RSMo Cum. Supp.1997, in the St. Louis County Circuit Court. At the trial on October 14, 1997, the trial court refused to admit the breathalyzer results and the certificate of analysis into evidence on the ground that "the certificate contains hearsay, specifically the statement of testing by an independent laboratory." The trial court entered a judgment reinstating Tate's driving privileges. Director appeals from this judgment.

■■■ The judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Reinhold v. Director of Revenue*, 961 S.W.2d 904, 905 (Mo.App. E.D. 1998). To establish a prima facie case at trial, Director has the burden of showing by a preponderance of the evidence that (1) the arresting officer had probable cause to arrest the driver for driving while intoxicated; and (2) at the time of the arrest, the driver's blood alcohol content is .10% or greater. *Green v. Director of Revenue*, 961 S.W.2d 936, 938 (Mo.App. E.D.1998). For Director to establish a foundation for admission of a breathalyzer test into evidence, she must show that the test was performed (1) according to techniques and methods approved by the Department of Health; (2) by persons possessing a valid permit; and (3) using equipment and devices approved by the Department of Health. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo.App. E.D. 1997).

In her two points on appeal, Director argues the trial court erred in refusing to admit the breathalyzer results and the trial court's decision was against the weight of the evidence because there was probable cause to arrest Tate and his blood alcohol content exceeded .10%.

■■■ At the time of trial, the parties relied on 19 CSR 25–30.050(4).[1] We note a new Department of Health regulation, 19 CSR 25–30.051, which addresses certificates of analysis, became effective September 1, 1997. This new regulation became effective after Tate's arrest but prior to his trial. Regulations concerning procedural rules apply retrospectively, and therefore, we review under the revised regulation. *Vilcek v. Director of Revenue*, 974 S.W.2d 602, 604 (Mo. App. E.D.1998); *Mullins v. Director of Revenue*, 946 S.W.2d 770, 772 (Mo.App. E.D. 1997).

Nineteen CSR 25–30.051 provides in relevant part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl ± 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% ± 3% when heated to 34 degrees ± 0.2 degrees Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aqueous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the

---

1. This regulation, effective until September 1, 1997, provided "[a]pproved standard simulator solutions used to verify and calibrate breath ana-

lyzers shall be certified by the manufacturer of that solution, and evidence of such certification shall accompany the maintenance report."

effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

Although 19 CSR 25–30.050(4) was at issue in *Overmann v. Director of Revenue*, 975 S.W.2d 183 (Mo.App. E.D.1998), we find that decision applicable to the present case. *See also, Vilcek,* 974 S.W.2d at 604. In *Overmann,* the driver challenged the admission of the certificate of analysis for the simulator solution because he alleged there was no evidence Director complied with 19 CSR 25–30.050(4). *Overmann,* 975 S.W.2d at 185. The driver argued the certificate of analysis was "hearsay on hearsay" and failed to meet the requirements of The Uniform Business Records as Evidence Law, Section 490.680, RSMo 1994. *Id.*

 The court noted that under 19 CSR 25–30.050(4), Director was only required to show (1) the police department used a solution certified by the solution's manufacturer in calibrating the breath analysis machine; and (2) the police department attached proof of the manufacturer's certification to the maintenance report that the police department submitted to the Department of Health. *Id.* at 185–86, *quoting Dickerson v. Director of Revenue,* 957 S.W.2d 478, 480–81 (Mo.App. E.D.1997). This court held that Section 490.680 provides a statutory exception to the hearsay exclusionary rule by permitting the admission of business records if the custodian of the records or other qualified witness establishes a proper foundation by attesting to the records' identity and mode of preparation. *Id.* at 185. Furthermore, Section 490.692.1, RSMo 1994, permits the custodian or other qualified witness to establish the requisite foundation for the records' admission by affidavit rather than by testifying at trial. *Id.* If there is a proper attestation by affidavit under Section 490.692, then the cer-

tificate of analysis is admissible under The Uniform Business Records as Evidence Law to demonstrate that the police complied with the requirements of 19 CSR 25–30.050(4). *Id.* at 186.

 Similar to *Overmann,* here Director attached the certificate of analysis to a St. Louis County police officer's affidavit to demonstrate that the police department complied with the requirements of 19 CSR 25–30.051 in maintaining its breath analysis machine. The officer's affidavit regarding the St. Louis County Police Department records is identical in form to the model provided in Section 490.692.3. Therefore, Director laid a proper foundation for admission of business records and the trial court's stated reason for excluding the breath analyzer result is contrary to this court's holding in *Overmann* and *Dickerson.* However, a bench-tried judgment that reaches a correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment. *Dent v. Director of Revenue,* 977 S.W.2d 281, 282 (Mo.App.E.D., 1998); *Fix v. Fix,* 847 S.W.2d 762, 766 (Mo. banc 1993). At trial, Tate also argued Director failed to follow the Department of Health regulations.

Subsection (3) of 19 CSR 25–30.051 states, "the certificate shall include the name of the supplier." [2] The certificate before this court shows RepCo at the top of the certificate and provides that samples of the solution were analyzed by an independent laboratory. The certificate is signed by the president of RepCo. The certificate lists the lot number, test results, and the expiration date for the tested lot. However, the certificate has no language indicating that RepCo is the actual supplier of the solution. Further, there was no testimony regarding who supplied the simulator solution to the police department. On the maintenance report, the officer wrote down, "Repco Marketing Inc. Lot # 96003." However, again, there is no language actually indicating that RepCo supplied the solution.

In two recent cases before this Court, we found that the Director failed to establish the

**2.** A new regulation, 19 CSR 25–30.051, addressing standard simulator solutions, became effective May 4, 1998, and provides that standard simulator solutions "shall be solutions from approved suppliers." Subsection (3) lists the approved suppliers of standard simulator solutions with RepCo Marketing, Inc., listed as one of three approved suppliers.

necessary foundation for admission of breathalyzer results where the certificate of analysis failed to include the manufacturer of the solution as required by 19 CSR 25–30 .050(4). *Dent,* at 282; *McDonough v. Director of Revenue,* 977 S.W.2d 278, 279 (Mo. App.E.D., 1998). While those certificates contained the name of RepCo Marketing, Inc., there was no evidence to indicate that RepCo was in fact the manufacturer. *Dent,* at 282; *McDonough,* at 279. Those cases were decided under 19 CSR 25–30.050(4), which required the simulator solution to be certified by the manufacturer. The rule in question here, 19 CSR 25–30.051, requires the simulator solutions to be certified by the *supplier.* However, the same reasoning used in *Dent* and *McDonough* applies here. Unless there is some applicable exception, it seems that the certificate of analysis fails to conform to 19 CSR 25–30.051(1) and (3).

In response, Director argues that subsection (4) of 19 CSR 25–30.051 provides an exception in this case. Subsection (4) provides that maintenance reports completed on or after March 26, 1996, but before the effective date of September 1, 1997, are valid "if a certificate of analysis was supplied with the simulator solution." Director contends she met her burden under subsection (4) because the maintenance report in this case was completed on April 14, 1997, and a certificate of analysis was supplied with the simulator solution used to calibrate the breathalyzer.

In interpreting administrative rules, we rely on the same principles of construction as those used in interpreting statutes. *Woolridge v. Woolridge,* 915 S.W.2d 372, 378 (Mo.App. W.D.1996). When examining a subsection of a rule, it must be viewed in the light of the entire regulation and harmonized with that regulation, if possible. *Mullins,* 946 S.W.2d at 771; *Frene Valley Corp. v. Dept. of Social Services,* 926 S.W.2d 144, 146 (Mo.App. E.D.1996). The primary rule of statutory construction is to ascertain the lawmaker's intent from the language used and give effect to that intent, while considering the words used in their plain and ordinary meaning. *Tuft v. City of St. Louis,* 936 S.W.2d 113, 119 (Mo.App. E.D.1996).

Here, the rule provides certain standards with which a police department must comply in verifying and calibrating its breath analyzers. Subsections (1) through (3) specifically set forth those standards. However, in subsection (4), the Department of Health provides an exception for reports completed on or before March 26, 1996 until September 1, 1997. For those maintenance reports, if a certificate of analysis was supplied with the simulator solution that is sufficient. The clear intent of the lawmakers, even while viewing the regulation in its entirety, was to exempt those reports from complying with the technicalities outlined in the prior three subsections. Therefore, in the present case, there was no necessity for the certificate of analysis to conform to the requirements outlined in subsection (3).

We find further support for this conclusion in *dicta* language used in this Court's opinion in *Vilcek,* 974 S.W.2d at 605. In *Vilcek,* this Court held that if the requirements of the Uniform Business Records as Evidence law, Section 490.680, RSMo 1994, are met, then the certificate of analysis is admissible as a business record to demonstrate that the police complied with the requirements of 19 CSR 25–30.051. *Id.* The Court found Director had established a foundation for admission of the breathalyzer test. *Id.* In *dicta,* the Court then noted: "In addition, the maintenance report is considered valid under the language of 19 CSR 30.051(4)." [3] *Id.* In making this note, the Court implied Director only needed to show compliance with subsection (4) of 19 CSR 25–30.051 to meet the Department of Health guidelines.

In the present case, Director met her burden by including in the business records the certificate of analysis provided with that lot number of simulator solution used to calibrate the breathalyzer used to test Tate. Therefore, Director established the proper foundation for admission of the business records in question through the officer's affidavit. Therefore, the trial court erroneously applied the law and abused its discretion in refusing to admit the business records, specifically the certificate of analysis. Further,

**3.** The maintenance report in question was completed on March 22, 1997.

the record indicates Director satisfied her burden of proof and the trial court's judgment is against the weight of the evidence. The judgment is reversed and remanded for the trial court to enter judgment reinstating the suspension of Tate's driving privileges.

Reversed and Remanded.

KAROHL, J., and CHARLES B. BLACKMAR, Senior Judge, concur.