

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| JIMMY KENT RIGGINS, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33368 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | **Filed: Jan. 27, 2015** |
| | ) | |
| Respondent-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

### <u>REVERSED AND REMANDED</u>

The Director of Revenue ("Director") revoked the driver's license of Jimmy Kent

Riggins ("Driver") for operating a motor vehicle in June 2013 with a blood-alcohol content

that exceeded the legal limit. *See* sections 302.505 and 302.525.[1] Driver petitioned for

and received a trial *de novo* pursuant to section 302.535.[2] The trial court sustained Driver's

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2009. All references to the Code of State Regulations ("CSR") are to Mo. Code Regs. Ann. (2014).

[2] No transcript has been filed in the instant appeal. The docket entries concerning the hearings held on March 21 and June 6, 2014 do not state what exhibit(s) were offered or admitted. The amended judgment discussed, *infra*, does not identify exhibits or recite facts about the breath test or the machine used to obtain it. Director's statement of facts relies upon docket entries and pleadings in the legal file, as well as "Exhibit A" purporting to be records from the Director's department that they have deposited with this court. Generally, "[t]his court will not convict the trial court of error when we do not know what evidence was before it." ***In re Carl McDonald Revocable Trust Dated Oct. 1, 1979***, 942 S.W.2d 926, 933 (Mo. App. S.D. 1997). We do so here because Driver makes no objection to Director's deposit of Exhibit A and presumably cites it himself as he refers to "exhibits" with no specification of something different than that cited by the Director. Driver also affirmatively states that the statement of facts in Director's brief is correct regarding the probable cause statement and the officer's report related to the case. Finally, Driver agrees with Director's

objection to admission of Driver's breath-test results, ruled in its amended judgment ("the amended judgment") that Director "failed to establish that [Driver's] BAC [blood-alcohol content] was .08% or more by weight[,]" and ordered Director "to remove the revocation" and "reinstate [Driver's] driving privileges to the extent he is otherwise eligible."

Director contends the trial court erred in excluding the breath test for two reasons: (1) "the breath analyzer used to administer [Driver's] breath test had been properly verified and calibrated according to applicable regulations of the Department of Health and Senior Services [("DHSS")]" as only "a single concentration level" was necessary "when performing a calibration check"; and (2) the trial "court applied the wrong version of the [DHSS] regulation governing the verification and calibration of breath test devices" because "the regulation is procedural and is to be given retroactive application[,]" and "the version . . . in effect at the time of [Driver's] trial clearly stated that only a single concentration level of the standard simulator solution" was necessary in checking the breath analyzer's calibration.

Finding merit in Director's first point, we reverse the judgment and remand the case for further proceedings consistent with this opinion.[3]

---

summary of "[t]he procedural aspects of the case[.]"  While the utilization of Rule 81.13 -- which provides for an "Agreed Statement as the Record on Appeal" -- would have made the underlying facts more readily apparent, we will review the appeal based upon the facts that may be gleaned from the admissions made by Driver in his brief, and a maintenance report included in Exhibit A.  Cf. *C.S., Jr. v. L.K.M.,* 73 S.W.3d 852, 854 (Mo. App. S.D. 2002) (where no transcript was filed, but the legal file included pleadings with exhibits, and the briefs contained statements of fact, the court "glean[ed] the facts from admissions found in or resulting from" those materials)*, and **In re Trust of Nitsche**, 46 S.W.3d 682, 684 (Mo. App. S.D. 2001) (documents not a part of the record are not considered on review but, "a statement of fact asserted in one party's brief and conceded as true in the opposing party's brief may be considered as though it appears in the record").  All rule references are to Missouri Court Rules (2014).
[3] Because our resolution of Director's first point is dispositive of this appeal, we need not address the question of retroactivity.

## Applicable Principles of Review and Governing Law

We will affirm a judgment reinstating driving privileges "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Gannon v. Dir. of Revenue*, 411 S.W.3d 394, 397 (Mo. App. E.D. 2013). "The nature of our review is directed by whether the particular issue is a question of fact or law." *Cortner v. Dir. of Revenue*, 408 S.W.3d 789, 792 (Mo. App. E.D. 2013). The question at issue in this case is the appropriate interpretation of an administrative regulation -- a question of law. "[Q]uestions of law decided in court-tried cases" are reviewed *de novo*. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). "We apply the same *de novo* review to regulations as to statutes[,]" *Turner v. Mo. Dept. of Conservation*, 349 S.W.3d 434, 442 (Mo. App. S.D. 2011), and "[i]n interpreting administrative rules, we rely on the same principles of construction as those used in interpreting statutes." *Tate v. Dir. of Revenue*, 982 S.W.2d 724, 728 (Mo. App. E.D. 1998).

## Facts and Procedural Background

On June 14, 2013, Driver was approached by a Greene County Sheriff's Deputy at a "DWI checkpoint[.]" The officer, who smelled intoxicants emanating from Driver's vehicle, administered a field sobriety test to Driver, and Driver agreed to provide a breath sample. Driver's breath sample registered a blood alcohol concentration by weight of .169 % on an "ALCO-SENSOR IV WITH PRINTER" machine ("the breath analyzer").

At Driver's March 21, 2014 trial *de novo*, Director's counsel offered records that included Driver's breath test result. Driver's counsel objected to its admission, but the basis for his objection is not recorded in the docket entry related to the trial. The trial court did not make an immediate ruling on Driver's objection. Instead, it directed Director to file

3

a brief concerning that objection and permitted Driver to file a brief thereafter. Director's trial brief maintained that Driver's position was that the version of 19 CSR 25-30.051 "in effect from December 30, 2012 to February 28, 2014 required Type II permit holders to use all three simulator standards each time they conducted a monthly maintenance check."[4] Driver's subsequent trial brief confirmed that Director had stated Driver's position correctly.

The officer's report contained in Exhibit A indicated that it included a "[c]opy of [the] most recent Maintenance Report prior to test." A form dated June 7, 2013 -- "ALCO-SENSOR IV WITH PRINTER MAINTENANCE REPORT" ("the maintenance report") -- reflected the same serial number noted in the officer's report as the breath analyzer used on Driver, and the maintenance report was also included in Exhibit A. The relevant portion of the maintenance report is reproduced below:

| BREATH ALCOHOL ACCURACY STANDARDS | | |
|---|---|---|
| ☑ SIMULATOR SOLUTION | ☐ COMPRESSED ETHANOL-GAS MIXTURE | |
| ☑ STANDARD SUPPLIER Guth Laboratories | LOT # 13010 | EXP. DATE 01/09/2015 |
| ☑ SIMULATOR TEMPERATURE (34°C ± 0.2°C) 34.0C | SIMULATOR SN SD2219 | SIMULATOR EXP DATE 05/20/2014 |
| ☑ CALIBRATION CHECK – (ONLY ONE STANDARD IS TO BE USED PER MAINTENANCE REPORT)<br>Run three tests using a standard solution. All three tests must be within ±5% of the standard value and must have a spread of .005 or less. Check the box corresponding to the standard solution being used. (PRINTOUT ATTACHED)<br>☑ 0.100% STANDARD - MUST READ BETWEEN 0.095% and 0.105% INCLUSIVE<br>☐ 0.080% STANDARD - MUST READ BETWEEN 0.076% and 0.084% INCLUSIVE<br>☐ 0.040% STANDARD - MUST READ BETWEEN 0.038% and 0.042% INCLUSIVE | | |
| TEST 1 ☛ .098 | TEST 2 ☛ .098 | TEST 3 ☛ .098 |

After the parties filed their trial briefs, the trial court entered its initial "JUDGMENT" in April 2014. That document stated "that the subject regulation unambiguously requires vapor concentrations at all three (3) of the delineated values.

---

[4] "Maintenance checks are the standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by [DHSS.]" 19 CSR 25-30.011(2)(F).

[Director's] argument of retrospective application despite the plainly stated limitation in the 'savings clause', is circular. [Driver's] objection to the breathalyzer results is sustained."

The trial court's subsequent amended judgment provided the same ruling on the admissibility of the breath test results as stated in the April 2014 ruling, added that "[b]ecause there was an insufficient foundation for admission of the breath test result, [Director] failed to establish that [Driver's] BAC was .08% or more by weight[,]" and ordered a reversal of Director's revocation as noted above.

**Analysis**

Point I asserts that the breath analyzer "had been properly verified and calibrated according to applicable regulations[,]" arguing, in part, that 19 CSR 25-30.051 does not exist in isolation and must be interpreted in the context of related rules, particularly 19 CSR 25-30.031.

Director's brief, relying on 19 CSR 25-30.031, then presents the following cogent argument:

> The rule defines when maintenance checks must be performed and requires that records of those maintenance checks be kept. 19 CSR 25-30.031(3) (Nov. 30, 2012). The rule also requires that maintenance checks be recorded on "the appropriate maintenance report form for the specific instrument being checked[.]" 19 CSR 25-30.031(7) (Nov. 30, 2012). Those approved forms were included with the rule in the Code of State Regulations and provide further insight into the intent behind the rules.
> The approved form for the [breath analyzer] contained a section for recording the calibration check. That section contained the admonition, "Only one standard is to be used per maintenance report." It also provided the following directions: "Run three tests using a standard solution. All three tests must be within ± 5% of the standard value and must have a spread of .005 or less. Mark the box corresponding to the standard solution being used." Below those instructions were three boxes: one for a ten-percent standard solution, one for an eight-percent standard solution, and one for a four-percent standard solution.
> If the regulations required three calibration checks to be performed using three different standard solutions, DHSS would have included space

5

on the maintenance reports for the results of calibration checks at all three vapor concentration percentages. Instead, DHSS included one box for one standard, and emphatically stated that only one standard value is to be used when performing a maintenance check.

Nor can the rule be reasonably construed to require that three separate maintenance reports -- one each for the four-percent, eight-percent, and ten-percent solutions -- be filled out by the Type II permit holder. To the contrary, 19 CSR 25-30.031 mandates that a permittee "shall retain the *original report* of the maintenance check and submit a copy of *the report*" to [DHSS]. 19 CSR 25-30.031(3) (Nov. 30, 2012) (emphasis added). The use of the singular "report" rather than the plural "reports" shows that the permit holder is only required to fill out one maintenance report reflecting the performance of one calibration check using one of the listed vapor concentration levels.

(Record citations omitted.)

Based upon this reasoning, Director asserts that 19 CSR 25-30.051 cannot be interpreted to require the use of three standard solutions for each calibration check. We agree.

Director is to "revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath or urine was [.08 %] or more by weight," section 302.505.1; such a driver may then request an administrative hearing, *see* section 302.530.1;[5] and thereafter the driver may "petition for trial de novo by the circuit court." Section 302.535.1. Director "has the burden of demonstrating, by a preponderance of the evidence, that (1) there was probable cause for arresting the driver for driving while under the influence, and (2) the blood alcohol concentration level in the driver's blood exceeded the legal limit[.]" **Blazier v. Vincent**, 204 S.W.3d 658, 661 (Mo. App. W.D. 2006). "To establish a prima facie foundation for the admission into evidence of the results of a breathalyzer test, [Director] must establish the test was performed: (1)

---

[5] RSMo Cum. Supp. 2012.

following the approved techniques and methods of [DHSS], (2) by an operator holding a valid permit, (3) on equipment and devices approved by [DHSS]." ***Irwin v. Dir. of Revenue***, 365 S.W.3d 266, 269 (Mo. App. E.D. 2012) (quotations omitted); *see also* section 577.037.1 and .3. "Compliance with the regulations [concerning the testing equipment] is mandatory." ***Blazier***, 204 S.W.3d at 663.

Driver is correct that 19 CSR 25-30.051 addresses standard simulator solutions to be used in verifying and calibrating breath analyzers, but Driver is incorrect in assuming that this section also requires that "all the standard simulator solutions" must have been used at "each of the three (3) levels" in order to perform the maintenance check on the breath analyzer. The relevant portions of the version of 19 CSR 25-30.051 in effect in December 2012 stated:

> *PURPOSE: This rule defines the standard simulator solutions . . . to be used in verifying and calibrating breath analyzers . . . .*
>
> (1)   Standards used for the purpose of verifying and calibrating breath analyzers shall consist of standard simulator solutions . . . .
>
> (2)   Standard simulator solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
>
> (A) 0.10%;
> (B) 0.08%; *and*
> (C) 0.04%.

*See* 37 Mo. Reg. 1027-1029 (July 2, 2012) and 37 Mo. Reg. 1613 (Nov. 1, 2012) (emphasis added, revision marks removed). This version came about as a result of an amendment to 19 CSR 25-30.051 filed in May 2012. The regulation had previously provided in separate subsections that standard simulator solutions at the percent levels of .10% and .04% must be "from approved suppliers[,]" and it made no mention of a .08%

7

solution. 37 Mo. Reg. at 1028. The stated purposes of the amendment included that it "*add*[*ed*] *0.08% as another concentration level **available** for performing accuracy checks and instrument recalibrations*." ***Id.*** (emphasis by bolding ours).

When this rule was amended again in September 2013 (to become effective in February 2014) -- a date after Driver's breath test was administered but before his trial *de novo* occurred -- subsection (2) was reworded to change the "and" to an "or" as follows:

> (2)     Standard simulation solutions, used to verify and calibrate evidential breath analyzers shall be solutions from approved suppliers. The standard simulator solutions used shall have a vapor concentration within five percent (5%) of the following values:
>
>> (A) 0.10%;
>> (B) 0.08%; *or*
>> (C) 0.04%.

19 CSR 25-30.051(2) (emphasis added). The purpose section of this additional amendment stated: "*This amendment clarifies which standard simulator solutions of the listed concentrations may be used in verifying and calibrating breath analyzers, as well as the annual checks required on simulators used in conjunction with the standard simulator solution.*" 38 Mo. Reg. 1625 (Oct. 15, 2013).

Driver argues -- without citation to any supporting authority -- that this regulation "is a separate rule dealing with the accuracy of the breath analyzers and is not contingent on any other rule." Yet, regardless of which of the two versions applied at Driver's March 2014 trial, 19 CSR 25-30.051 does not regulate how breath analyzers are to be verified or calibrated apart from specifying the standards to be used. Subsection (8) of this regulation addresses previous "[m]aintenance reports . . . considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted" without otherwise specifying how a maintenance check is to

8

be performed or the resulting maintenance report is to be prepared. 19 CSR 25-30.051(8). Thus, it is necessary to consult other regulations to determine whether a maintenance check is in compliance with the appropriate regulations.

The obligation of "perform[ing] maintenance checks on breath analyzers as required by [DHSS]" is addressed in 19 CSR 25-30.031(1), and this regulation also specifies who is qualified to perform a maintenance check -- "[a] Type II permittee[,]" (hereinafter "permittee"), how often such checks must be performed, and the form to be used to report the maintenance check of a specific breath analyzer. 19 CSR 25-30.031(1), (3), (4) and (7).[6] This regulation provides that "[f]or the maintenance checks referred to in sections (3)-(5) of this rule, the appropriate maintenance report form for the specific instrument being checked shall be used[.]" 19 CSR 25-30.031(7). Specifically, "[w]hen performing a maintenance check on the Alco-Sensor IV with printer, Report No. 7 included herein shall be used." 19 CSR 25-30.031(7)(F); *see also* 37 Mo. Reg. at 1015 (revision marks removed).

We have previously looked to the requirements of a form included in 19 CSR 25-30.031 in determining whether the requirements of that particular regulation applied to an actual test of an individual's breath where a blank test performed as a part of that procedure registered a result of .001. *See Vernon v. Dir. of Revenue*, 142 S.W.3d 905, 910 (Mo. App. S.D. 2004). In *Vernon*, we found that "[p]ursuant to" this regulation, the form specified the calibration check to be performed on a specific breath analyzer "during periodic maintenance checks of the instrument only" and permitted a variance for purposes of the maintenance check, but it did not specify any variance permitted during a blank test

---

[6] The stated purpose of this regulation is: "*This rule establishes the qualifications, duties and responsibilities of [permittee] and establishes a maintenance report to be used for each of the approved breath analyzers in 19 CSR 20-30.050.*" 19 CSR 25-30.031.

that was part of the breath test of an individual.  *Id.* 910-11.  While the issue of whether

*both* standard simulator solutions referenced on the form had to be used was not raised

there, we considered the provisions of the form in interpreting the provisions of the

regulation.  *Id.* at 910.  *Cf. Poage v. Dir. of Revenue*, 948 S.W.2d 194, 196 (Mo. App.

E.D. 1997) (stating without further analysis that "[a]ccording to the form, only one

standard is to be used per maintenance report").

When Report No. 7 is included as a part of the regulation itself, as 19 CSR 25-

30.031(7) specifically provides, it is clear that only one standard simulator solution, and

not three, must be used in the maintenance check of the breath analyzer.  A copy of

"Report #7" is reproduced below:

MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES
STATE PUBLIC HEALTH LABORATORY

## ALCO-SENSOR IV WITH PRINTER MAINTENANCE REPORT

REPORT #7

Complete this report in duplicate at the time of the regular monthly preventative maintenance check, and whenever instrument is repaired. Send copy to Department of Health and Senior Services; retain original in department file.

| ALCO SENSOR IV SN | PRINTER SN | DATE OF INSPECTION |
|---|---|---|
| LOCATION OF INSTRUMENT (STREET AND CITY) | | TIME OF INSPECTION |

**CHECKLIST:** Place a mark in the box by each item if found to be satisfactory or if operating within established limits. (Write in observed values where determined.) Unmarked items must be corrected before using instrument.

☐ DIGITAL READOUT (ALL ELEMENTS OPERATIONAL)

☐ TEMPERATURE OF ALCO SENSOR (10°C - 40°C)

☐ PRINTER WORKING PROPERLY

☐ TIME AND DATE DISPLAYING PROPERLY

### BREATH ALCOHOL ACCURACY STANDARDS

☐ SIMULATOR SOLUTION          ☐ COMPRESSED ETHANOL-GAS MIXTURE

☐ STANDARD SUPPLIER _____ LOT # _____ EXP. DATE _____

☐ SIMULATOR TEMPERATURE (34°C ± 0.2°C) _____ SIMULATOR SN _____ SIMULATOR EXP DATE _____

☐ CALIBRATION CHECK – (ONLY ONE STANDARD IS TO BE USED PER MAINTENANCE REPORT)
Run three tests using a standard solution. All three tests must be within ±5% of the standard value and must have a spread of .005 or less. Check the box corresponding to the standard solution being used. (PRINTOUT ATTACHED)
  ☐ 0.100% STANDARD - MUST READ BETWEEN 0.095% and 0.105% INCLUSIVE
  ☐ 0.080% STANDARD - MUST READ BETWEEN 0.076% and 0.084% INCLUSIVE
  ☐ 0.040% STANDARD - MUST READ BETWEEN 0.038% and 0.042% INCLUSIVE

| TEST 1 ☞ | TEST 2 ☞ | TEST 3 ☞ |
|---|---|---|

☐ RFI DETECTOR OPERATING

**INDICATE THE NUMBER OF BREATH TESTS IN THE FOLLOWING RANGES SINCE THE LAST MAINTENANCE REPORT: (DO NOT INCLUDE SELF-ADMINISTERED TESTS)**

| REFUSALS | (0-.04) | (.05-.09) | (.10-.14) | (.15-.19) | (OVER .19) |
|---|---|---|---|---|---|

List any new parts and describe any alteration or modification that was made to restore the instrument to operate satisfactorily and within established limits (use other side if necessary).

### INSPECTING OFFICER

| SIGNATURE ▸ | PRINT NAME |
|---|---|
| TYPE II PERMIT NUMBER/EXPIRATION DATE | TELEPHONE NUMBER |

**Return completed report to the:** Breath Alcohol Program, MO Department of Health and Senior Services, Southeast District Office
2875 James Boulevard
Poplar Bluff, MO 63901

MO 580-1351 (6-10)          AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER          LAB-114
services provided on a nondiscriminatory basis

11

Thus, the form refers to a single standard solution and, in directing that three tests are to be performed, it references a single "standard value . . . . corresponding to the standard solution being used."  19 CSR 25-30.031 Report #7 and 37 Mo. Reg. at 1023.  Report #7 provides one box for the identification of the standard supplier, lot number, and expiration date.[7]  *Id.*  According to the form, permittee is to record the results of the three tests performed with a single standard simulator solution in the three boxes for test results.  *Id.*  There is no indication on Report #7 that the maintenance report is to be one of a series of three maintenance reports to be completed for the same inspection, nor is there any place to link a given report with other reports so as to certify that all three standard simulator solutions were used for a single inspection.  *Id.*  Rather, the form directs that the report -- singular -- is to be duplicated, with one copy submitted to DHSS and one copy retained as a record.

"[S]tatutes are not read in isolation."  ***Mercy Hosps. E. Communities v. Mo. Health Facilities Review Comm.***, 362 S.W.3d 415, 419 (Mo. banc 2012).  Statutory provisions addressing the same subject are treated *in pari materia* so that they are construed together.  ***EBG Health Care III, Inc. v. Mo. Health Facilities Review Comm.***, 12 S.W.3d 354, 360 (Mo. App. W.D. 2000).  "If possible, a statute will not be interpreted so as to directly conflict with another applicable statute or otherwise lead to an absurd result."  ***Mercy Hospitals***, 362 S.W.3d at 419-20.  The same rules of construction apply to regulations.  ***Tate***, 982 S.W.2d at 728.

---

[7] All of the forms specified by 19 CSR 25-30.031(A)-(F) include the direction that "**ONLY ONE STANDARD IS TO BE USED PER MAINTENANCE REPORT**" and boxes to check indicating the value of the standard used, with the exception of Report No. 2 concerning a "CMI Intoxilyzer 8000[.]"  19 CSR 25-30.031(B).  However, this particular form includes one box, only, for the value of the standard to be stated and, like the other forms, it included a single area for a standard lot number and supplier to be recorded.  19 CSR 25-30.031(B), Report No. 2.

To give 19 CSR 25-30.051 the meaning the trial court apparently adopted would be inconsistent with the mandatory form provided by 19 CSR 25-30.031(7)(F), which specifies that "**ONLY ONE STANDARD IS TO BE USED PER MAINTENANCE REPORT**[.]"  We are to avoid such a result, if possible.  *Mercy Hosps.*, 362 S.W.3d at 419-20; *Tate*, 982 S.W.2d at 728.  The purpose of the May 2012 amendment of 19 CSR 25-30.051 that added a standard simulator solution of .08% with the word "and" between it and the provision of the .04% standard was to make "*another concentration level **available** for performing accuracy checks and instrument recalibrations*."  37 Mo. Reg. at 1028 (emphasis by bolding added).  It was not to mandate an additional concentration level.  Thus, the appropriate construction of these two regulations allows the permit holder a choice of three standard simulator solutions to use in verifying and calibrating the breath analyzer, and the use of any one of the three would satisfy the requirements for the maintenance check.

Point I is granted, rendering any analysis of Point II moot.  The amended judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS