**STATE of Missouri, Respondent,**

v.

**Monte L. STOTTLEMYRE, Appellant.**

**No. WD 58040.**

Missouri Court of Appeals,
Western District.

Jan. 23, 2001.

Jeffrey S. Eastman, Gladstone, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BRECKENRIDGE, P.J., ULRICH and HOWARD, JJ.

BRECKENRIDGE, Judge.

Monte L. Stottlemyre was convicted by a jury of driving while intoxicated, § 577.010, RSMo 1994. Following the conviction, he was sentenced as a prior and persistent intoxication-related offender under § 577.023, RSMo 1994, and as a prior and persistent offender under § 558.016, RSMo 1994, to eight years' imprisonment. On appeal, Mr. Stottlemyre claims that the trial court erred in overruling his objections to the admission of evidence of the pre-arrest breath test results. He alleges that the State failed to provide evidence that the chemical testing device or proce-

dure had been approved by the Missouri Department of Health pursuant to § 577.026, RSMo 1994. As a result, he claims that no foundation was laid for the admission of the test. Secondly, Mr. Stottlemyre challenges the constitutionality of § 577.023, RSMo Cum.Supp.1998, under which he claims he was convicted as a persistent alcohol-related offender because Senate Bill 634, which amended § 577.023, related to more than one subject and the title did not clearly express the purpose of the bill. Because this court finds that the requirements of § 577.026 do not apply to a pre-arrest breath test and that Mr. Stottlemyre failed to preserve and lacks standing to pursue his constitutional challenge to § 577.023, RSMo Cum.Supp.1998, the judgment of the trial court is affirmed.

## Statement of Facts

On September 8, 1997, Mr. Stottlemyre was driving a maroon vehicle westbound on Highway 291 in Platte County, Missouri. His mother, Betty Foster, and his girlfriend, Mary Brock, were passengers in the car. As Mr. Stottlemyre passed over the Highway 291 overpass at Interstate 435, Trooper Michael Moats of the Missouri State Highway Patrol observed the car Mr. Stottlemyre was driving past him at a high rate of speed. Trooper Moats checked Mr. Stottlemyre's speed with his laser radar and the radar indicated that he was traveling at a speed of 75 miles per hour. The posted speed limit in that area of Highway 291 is 55 miles per hour. Trooper Moats activated his lights and pursued the vehicle.

After Mr. Stottlemyre stopped the vehicle, Trooper Moats approached him and asked for his driver's license. Mr. Stottlemyre responded by giving Trooper Moats a Missouri Identification card. When asked about his license, Mr. Stottlemyre responded that he did not have one. During this contact with Mr. Stottlemyre, Trooper Moats detected a very strong odor of alcohol on Mr. Stottlemyre's breath. He also observed that Mr. Stottlemyre's words were slurred and he mumbled when he spoke. Believing Mr. Stottlemyre was "obviously intoxicated," Trooper Moats asked him to get out of the car and stand between the two vehicles. Trooper Moats observed that Mr. Stottlemyre had a sway to his walk as he approached the area between the two vehicles. At that point Trooper Moats administered a Horizontal Gaze Nystagmus Test, which tests for involuntary jerking of the eye and looks for a level of intoxication. This test showed positive indicators for intoxication. Trooper Moats then administered a pre-arrest breath test. The test was given on a portable breathalyzer in which a person blows into a small chamber that gives an analysis of the sample of breath. When the results of the portable breath test indicated the presence of alcohol, Trooper Moats normally would have conducted additional field sobriety tests prior to placing the subject under arrest. He determined that for safety concerns, however, no further field testing should be done because of the conditions of the road where they were stopped and because of Mr. Stottlemyre's level of intoxication. Trooper Moats placed Mr. Stottlemyre under arrest.

Mr. Stottlemyre was transported to the Platte County Jail, where he was advised of his rights by Trooper Moats. According to department regulations, Trooper Moats then asked Mr. Stottlemyre to perform two additional field sobriety tests, the walk-and-turn test and the one-leg-stand test. Mr. Stottlemyre was unable to complete these tests. He was then asked and refused to submit to a breath test to measure the actual content of alcohol in his blood.

Mr. Stottlemyre was charged by information with driving while intoxicated in violation of § 577.010. The information alleged that Mr. Stottlemyre was a prior and

persistent intoxication-related offender under § 577.023, because he had two prior driving while intoxicated convictions in May 1990 and July 1996. It also alleged that he was a prior offender under § 558.016, because of a prior conviction for involuntary manslaughter on March 31, 1987, and a prior conviction for attempt to commit burglary in the first degree on January 10, 1994.

A trial was held on October 18, 1999, and a jury convicted Mr. Stottlemyre of driving while intoxicated. The trial court, having found prior to submission to the jury that Mr. Stottlemyre was a persistent intoxication-related offender as defined in § 577.023, and a persistent offender under § 558.016, sentenced him to eight years' imprisonment. This appeal followed.

### The Requirements of § 577.026, RSMo 1994, Do Not Apply to Pre–Arrest Breath Tests

In Mr. Stottlemyre's first point, he claims that the trial court erred in overruling his objections to the admission of the results of the portable breath test administered to him because there was no evidence that the chemical testing device or procedure had been approved by the Missouri Department of Health pursuant to § 577.026, RSMo 1994.[1] He argues that because the State failed to show that the portable breath test administered to him met the requirements of § 577.026, the State failed to lay a proper foundation for the admission of the test results.

A trial court has broad discretion in determining whether evidence should be admitted or excluded. *State v. Hirt*, 16 S.W.3d 628, 634 (Mo.App.2000). This court will reverse such a determination only where it is shown that the trial court clearly abused its discretion. *Id.* An abuse of discretion will be found "where the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *State v. Masden*, 990 S.W.2d 190, 193 (Mo.App.1999). For this court to reverse a lower court's decision to admit evidence, the defendant must have been prejudiced and the admission of the evidence must have been "so prejudicial that it deprived the defendant of a fair trial." *State v. Merrill*, 990 S.W.2d 166, 170–71 (Mo.App.1999).

In determining whether the admission of the evidence of the portable breath test was an abuse of discretion, this court first considers the nature of the test and the statutory requirements for admission of such evidence. The portable breath test is a device used to detect the presence of alcohol on a person's breath and provides probable cause for arrest. *State v. Duncan*, 27 S.W.3d 486, 488 (Mo.App.2000). The results are not used to establish blood alcohol content in determining whether a person is intoxicated. The use of such tests is governed by § 577.021, RSMo Cum.Supp.1997,[2] which reads as follows:

A member of the state highway patrol may, prior to arrest, administer a chemical test to any person suspected of operating a motor vehicle in violation of section 577.010 or 577.012. A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content. The provisions of section 577.020 shall not apply to a test administered prior to arrest pursuant to this section.

The last line of the statute exempts prearrest breath tests from the requirements

---

1. All references to § 577.026 are to § 577.026, RSMo 1994.

2. All references to § 577.021 are to § 577.021, RSMo Cum.Supp.1997.

and provisions of § 577.020, RSMo Cum. Supp.1997.[3] Section 577.020 provides that any person who operates a motor vehicle on Missouri highways shall be deemed to have consented to chemical testing of the person's breath, blood, saliva or urine to determine the blood alcohol content if the person has been arrested upon reasonable belief that the person was driving while intoxicated. Subsections 3 and 4 of § 577.020 set forth the standards for tests administered under this section:

> 3. Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid pursuant to the provisions of sections 577.020 to 577.041 shall be performed according to methods approved by the state department of health by licensed medical personnel or by a person possessing a valid permit issued by the state department of health for this purpose.

> 4. The state department of health shall approve satisfactory techniques, devices, equipment, or methods to be considered valid pursuant to the provisions of sections 577.020 to 577.041 and shall establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health.

■■■ Mr. Stottlemyre concedes that these standards do not apply to the portable breath test administered to him in this case, as it was a pre-arrest breath test. Rather, he claims that the standards for the validity of chemical tests set forth in § 577.026 apply to pre-arrest breath tests. Section 577.026 provides as follows:

> 1. Chemical tests of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577.020 to 577.041, shall be performed according to methods and de-

vices approved by the state department of health by licensed medical personnel or by a person possessing a valid permit issued by the state department of health for this purpose.

> 2. The state department of health shall approve satisfactory techniques, devices, equipment, or methods to conduct tests required by sections 577.020 to 577.041, and shall establish standards as to the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health.

The requirements for the validity of chemical tests set forth in § 577.026 are virtually identical to the requirements set forth in subsections 3 and 4 of § 577.020. To exempt the administration of pre-arrest breath tests from the requirements of one statute and not the other would appear to be contradictory. To determine whether the requirements of § 577.026 apply to the validity of pre-arrest breath tests, this court must first "ascertain the intent of the legislature." *Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo.App.1999). In ascertaining the intent of the legislature, this court will first look to the plain and ordinary meaning of the language used in the relevant statutes. *Id.* Only where the intent of the legislature cannot be determined by the language used will a statute be considered ambiguous. *Id.* "Where two statutes concerning the same subject matter, when read individually, are ambiguous, but conflict when read together, [this court] will attempt to reconcile them and give effect to both." *Id.*

■■■ Read individually, §§ 577.020, 577.021, and 577.026 are not ambiguous. Likewise, §§ 577.020 and 577.021, when read together, do not present any ambiguity. The conflict arises when these statutes are read together with § 577.026. To re-

---

**3.** All references to § 577.020 are to § 577.020, RSMo Cum.Supp.1997.

solve the conflict, this court defers to the more specific of the statutes. "When the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." *Greenbriar Hills Country Club v. Director of Revenue,* 935 S.W.2d 36, 38 (Mo. banc 1996). Here, § 577.021 specifically concerns chemical tests administered prior to arrest that are used to establish probable cause for arrest and not as evidence of blood alcohol content. This would include the portable breath test administered to Mr. Stottlemyre. This statute also expressly exempts these types of tests from the requirements of chemical tests done for the purpose of ascertaining blood alcohol or drug content under § 577.020. Section 577.026, on the other hand, is a general statute that regulates the methods, techniques, devises and equipment used in conducting chemical tests pursuant to §§ 577.020 to 577.041. Clearly, § 577.021 is the more specific statute expressly concerning pre-arrest chemical tests. Section 577.026 governs chemical testing in general under the range of statutes on the subject matter.

Moreover, in construing general and specific statutes dealing with the same subject matter, this court takes into account the order in which the statutes were enacted. "[W]hen a general statute conflicts with one which is subsequently enacted with more detailed treatment of the same subject matter, the specific one is regarded as a qualification of the general statute." *Mo. Hosp. Ass'n v. Air Conservation Com'n,* 874 S.W.2d 380, 394 (Mo. App.1994). In this case, § 577.026 was originally enacted in 1982 and has not been amended since that time. Section 577.021 was originally enacted in 1993 and amended in 1996, however, as was § 577.020. Since § 577.021, the more specific statute, was enacted eleven years after § 577.026, the general statute, § 577.021 would prevail over § 577.026. Thus, the requirements for the validity of chemical tests contained in § 577.026 do not apply to the administration of chemical tests conducted under § 577.021.

Exempting chemical tests administered pursuant to § 577.021 from the standards for tests used to determine blood alcohol and drug content contained in §§ 577.020 and 577.026, since those standards are virtually identical, is consistent with the different purposes of each test. The results of post-arrest chemical tests administered under § 577.020 may be introduced to establish a defendant's guilt. Thus, "[t]he requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the amount of alcohol in an individual's system. The testing process is a procedural requirement to insure accurate results." *State v. Mack,* 903 S.W.2d 623, 630 (Mo. App.1995) (citations omitted). The results of pre-arrest tests administered under § 577.021, however, may not be used to establish guilt and are admissible only as evidence of probable cause to arrest and as exculpatory evidence. Because the results cannot be introduced as evidence of guilt, there is less reason for requiring that the chemical tests administered under § 577.021 adhere to the stringent requirements for the validity of chemical tests administered under § 577.020, which can be used as evidence of guilt. As this court stated in *Justice v. Director of Revenue,* 890 S.W.2d 728, 731 (Mo.App.1995), "[a] test administered with a portable breath analyzer does not constitute a test within the scope of § 577.020." Therefore, the standards set forth in §§ 577.020 and 577.026 do not apply to the portable breath test administered to Mr. Stottlemyre in this case.

Having determined that the requirements of § 577.026 do not apply, Mr. Stottlemyre's argument that the State failed to

lay a proper foundation for the admission of the portable breath test results by not demonstrating that the test met the requirements of that statute is without merit.[4] Mr. Stottlemyre's first point is denied.

## No Standing to Challenge Constitutionality

 In his next point, Mr. Stottlemyre argues that the trial court erred in finding that he was a persistent alcohol-related-traffic offender because Senate Bill 634, which amended § 577.023, RSMo 1994, the statute under which he was convicted, is unconstitutional. He argues the bill is unconstitutional because it related to more than one subject and the title did not clearly express the purpose of the bill.

 Generally, a challenge to the constitutionality of a statute would divest this court of jurisdiction. *State v. Roedel,* 884 S.W.2d 106, 108 (Mo.App.1994); Mo. Const. art. V, § 3. Yet "[t]he mere assertion" of such a claim, "does not deprive [this court] of jurisdiction unless the constitutional issue is real and substantial, and not merely colorable." *Id.* Because this court finds that Mr. Stottlemyre failed to properly preserve the issue for review and that he does not have standing to raise the issue, Mr. Stottlemyre's claim is merely colorable and without merit.

 To preserve this issue for appeal, the "constitutional claim must [have been] raised at the earliest opportunity and preserved at each step of the judicial process." *State v. Sumowski,* 794 S.W.2d 643, 647 (Mo. banc 1990). While Mr. Stottlemyre raised the issue in his motion for a new trial, he failed to raise it during the proceedings on the pretrial motions when the court made its finding that Mr. Stottlemyre was a persistent offender. Thus, he failed to raise it at the earliest opportunity and has not properly preserved this issue for review.

 Even if the issue had been properly preserved, Mr. Stottlemyre was not adversely affected by the amended statute. A person does not have standing to challenge the constitutionality of a statute simply because "[the statute] may be subject to the charge of invalidity." *State v. Pizzella,* 723 S.W.2d 384, 387 (Mo. banc 1987). Standing is a prerequisite to such a challenge. *Id.* at 386. In order to acquire standing, "a litigant must be 'adversely affected' by the statute he challenges." *Id.* (quoting *Ryder v. County of St. Charles,* 552 S.W.2d 705, 707 (Mo. banc 1977)). For Mr. Stottlemyre to have standing to challenge § 577.023, RSMo Cum.Supp.1998, he must show how the amendments to the statute contained in Senate Bill 634 "[have] application to the facts of his case" and, thus, "adversely affected" him. *Id.* at 387.

Senate Bill 634 amended § 577.023, RSMo 1994, to include in the definition of "intoxication-related traffic offense" the crimes of involuntary manslaughter, assault in the second degree, and assault of a law enforcement officer in the second degree. The revised § 577.023, RSMo Cum. Supp.1998, allows for these offenses to be considered when determining whether a person is a persistent alcohol-related offender. Section 577.023, RSMo Cum. Supp.1998, did not adversely affect Mr. Stottlemyre, however, because it was not in effect at the time that he committed the

4. Mr. Stottlemyre does not challenge the admissibility of the portable breath test results on any ground other than his assertion that the State was required to show that the test met the standards of § 577.026 in order to lay a proper foundation. Specifically, Mr. Stottlemyre does not challenge the admissibility of the test results based upon the relevancy of the issue of probable cause to arrest. Therefore, this court is ruling only on the narrow issue raised by Mr. Stottlemyre, and does not decide whether the test results were inadmissible on any other bases.

driving while intoxicated offense, so the statute does not govern his conviction. Nor is there any indication that the trial court applied the amended statute. Mr. Stottlemyre drove while intoxicated on September 8, 1997. The amendment to § 577.023 that Mr. Stottlemyre challenges became effective on May 19, 1998, pursuant to an emergency provision. No offense committed or penalty for an offense can be affected by the amendment of a statute, with the exception that an amendment that reduces or lessens the penalty or punishment shall be given effect. Section 1.160, RSMo 1994. The retrospective application of an amendment to a statute to disadvantage a criminal defendant would violate this statute. It would also be a violation of the *ex post facto* clause. *See State v. Coomer*, 888 S.W.2d 356, 359–60 (Mo.App. 1994). Therefore, Mr. Stottlemyre's conviction as a persistent alcohol-related offender was under § 577.023, RSMo 1994, not the revised version in Senate Bill 634.

There is no indication that the trial court erroneously applied the amended statute, because Mr. Stottlemyre was found to be a persistent offender under § 577.023, RSMo 1994, based upon two previous guilty pleas to charges of driving while intoxicated. The change in the statute to add the crimes of involuntary manslaughter and the two assault offenses had no affect on Mr. Stottlemyre's classification as a persistent alcohol-related traffic offender. Mr. Stottlemyre did have a prior conviction for involuntary manslaughter, but that conviction was not the basis for the trial court's finding that he was a persistent intoxication-related offender. The involuntary manslaughter conviction was used to prove that he was a prior offender under § 558.016, RSMo 1994. Whether Senate Bill 634 was constitutional or unconstitutional is immaterial in this case since the 1998 amendment to § 577.023, RSMo 1994, did not govern Mr. Stottlemyre's conviction and the trial court's rul-

ing is proper under the version of the statute in effect at the time he committed the offense.

Because Mr. Stottlemyre has no standing to raise the issue of Senate Bill 634's constitutionality and he failed to properly preserve the issue, this court will not address the merits of Mr. Stottlemyre's claim. Mr. Stottlemyre's second point is denied.

The judgment of the trial court is affirmed.

All concur.