Christy BRADFORD,
Plaintiff/Respondent,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Respondent/Appellant.

No. ED 79632.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 16, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Rebecca K. Wright, Asst. Atty. Gen., St. Louis, MO, for appellant.

Michael R. Young, Clayton, MO, for respondent.

MARY K. HOFF, Judge.

The Director of Revenue (Director) appeals from the trial court's judgment setting aside Director's suspension of Christy Bradford's (Driver's) driving privileges. We reverse and remand.

At 1:15 a.m., on June 25, 2000, Officer Scott Will (Will) stopped at a red light behind Driver's vehicle. Will observed Driver back up her vehicle from one lane and enter into another with the reverse lights still on. When the light turned green Driver accelerated backwards, nearly colliding with Will's police car. Will then followed Driver onto a highway and noticed that Driver failed to maintain a single lane and crossed the dotted line three times. Will activated his lights, stopped Driver's vehicle, and asked Driver to step out of her car. Will then noticed that Driver's speech was slurred and she was having difficulty standing.

Officer Mark Pruett (Pruett) arrived at the scene to assist Will and noticed "a moderate odor of alcoholic beverage on [Driver's] breath." Pruett observed that Driver's eyes were bloodshot and glassy and that Driver's speech was slurred. Pruett asked Driver if she had been drinking and Driver responded that she had

consumed three glasses of wine. After Driver failed three field sobriety tests, Pruett placed Driver under arrest and advised her of her rights under the Missouri Implied Consent Law. Driver consented to take a breath test. Pruett, who held a Type III permit [1] from the Missouri Department of Health, administered the test to Driver. Pruett instructed Driver to take a deep breath and blow into the machine and continue to blow until told to stop. Pruett noticed that Driver would "blow and then stop and then blow and then stop [which] caused the first test to invalidate the machine and instrument and then invalidate the sample." Pruett warned Driver that if she continued to blow and stop he would consider her actions to be a refusal to take the test. Driver informed Pruett that she had just recovered from bronchitis. Pruett gave Driver another chance to complete the test.

In order to get a sample the second time Pruett had to hit the "NV (No Volume) button" because Driver was again blowing and stopping. The "NV button" shows up on the printout as "sample control override." According to the operational checklist Pruett followed, he complied with all of the requirements necessary when giving a DataMaster breath test. The results of this second test showed Driver had a blood alcohol concentration (BAC) of .123 percent.

Driver was cited for driving while intoxicated (DWI) and Director suspended Driver's driving privileges pursuant to Section 302.505 RSMo 1994.[2] Driver filed a petition for trial *de novo* before a traffic commissioner (Commissioner) asserting the results of the breath test were unreliable and the arresting officer did not have probable cause to arrest for DWI. Following the trial, Commissioner affirmed Director's suspension of Driver's driving privileges finding Pruett had probable cause to arrest Driver and that Driver had a BAC of .10 percent or more. Driver then filed a motion with the trial court requesting a hearing by a judge "because the record shows that the breath analysis done after [Driver's] arrest was not done in compliance with the rules and regulations of the Missouri Department of Health." The trial court, after a review of the record made before Commissioner, determined there was a "lack of substantial evidence to find [Driver] had a blood alcohol concentration of .10% or more by weight due to the failure of evidence regarding the reliability of the 'override' procedure," and ordered that Driver's driving privileges be reinstated. Director appeals from that judgment.

We will affirm the judgment below unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Eskew v. Director of Revenue*, 17 S.W.3d 159, 160 (Mo.App. E.D.2000).

Director claims the trial court erred in setting aside the suspension of Driver's driving privileges because the suspension action was proper in that Director established a *prima facie* case under Section 302.505, which Driver failed to rebut. Director asserts that the results of the breath test were reliable and therefore the trial court's judgment was against the weight of the evidence. The only issue raised before the trial court on rehearing was the reliability of the breath test. Ac-

---

1. Type III permittees are authorized to operate breath analyzers. 19 CSR 25–30.041 (1999).

2. All subsequent statutory citations are to RSMo 1994 unless otherwise stated.

cordingly, we need not address the probable cause requirement of Section 302.505.[3]

At the trial *de novo* before Commissioner, Director presented evidence that Pruett was a Type III permittee authorized to administer breath tests.[4] Pruett testified that he followed proper procedure when administering the test to Driver, and in support provided Commissioner with the blood alcohol test report used when he administered the breath test to Driver, which contained a checklist of the required steps for administering the test properly. Driver did not object to the introduction of this evidence, nor did she provide any contrary evidence regarding Pruett's qualifications or adherence to procedure when administering the breath test to Driver. From this uncontroverted evidence, the trier of fact could reasonably conclude the breath test was administered in compliance with the rules and regulations of the Missouri Department of Health; any contrary conclusion is unsupported by the record. "It is settled that if breathal[y]zer tests are administered by certified operators in accordance with the operating procedures promulgated by the Missouri Division of Health, a *prima facie* case for the introduction of the test results is made." *Miller v. Director of Revenue*, 719 S.W.2d 787, 790 (Mo. banc 1986).

In its judgment, the trial court concluded that there was a failure of evidence regarding the reliability of the results of the breath test due to the use of the sample override procedure, namely the "NV button". At the trial *de novo* before the Commissioner, Director presented the testimony of Officer James Schnurr (Schnurr) regarding the operation of the DataMaster breath analyzer. Schnurr held a Type II permit from the Missouri Department of Health, which according to the regulations of the Department of Health qualified him to instruct and supervise operators, train instructors, inspect and calibrate breathalyzer machines, perform field repairs, and operate breathalyzer machines such as the DataMaster. 19 CSR 25–30.031 (1998). As part of his duties, Schnurr maintained the DataMaster and had inspected the DataMaster less than two weeks before it was used on Driver and found it to be working properly.

Schnurr testified that he was familiar with the sample control override function on the DataMaster and had been trained in its use. Schnurr explained that "NV" stands for "No Volume" and that the "NV button" is used "when a person is having a difficult time giving a breath test. If they're blowing and stopping, blowing and stopping, or if they can't seem to meet the lung capacity to submit to the test." When questioned about the difference between the results when using the "NV button" compared to a regular full sample, Schnurr responded that "the sample that you have when you hit the NV button is going to be a lower reading than when you take a full and complete sample."

3.  Section 302.505 requires the Director to establish that 1) probable cause existed to arrest Driver for DWI, and 2) Driver's BAC equaled or exceeded the statutory limit of .10 percent by weight. *Stewart v. Director of Revenue*, 702 S.W.2d 472, 475 (Mo. banc 1986).

4.  Although a copy of Pruett's Type III permit was not provided to the court, Pruett's testimony that he is a Type III permittee is suffi-cient evidentiary foundation. Whether an officer possesses such a permit is a matter within his personal knowledge, and in the presence of testimony that the officer has completed training for and received his Type III permit from the Missouri Department of Health, the permit itself is unnecessary. *Miller v. Director of Revenue*, 719 S.W.2d 787, 790 (Mo. banc 1986).

The results of Driver's breath test, utilizing the sample control override function, reported Driver's BAC at .123 percent, over the .10 percent statutory limit. According to Schnurr's testimony, Driver's BAC was .123 percent at a minimum, and the results of the test would have been higher if Driver had given a full and complete sample. Director is not required to prove exactly what Driver's BAC was, rather Director is required to show "the alcohol concentration in [Driver's] blood or breath was ten-hundredths of one percent or more by weight." Section 302.505.

·The fact that Schnurr was qualified as a Type II permittee laid the foundation necessary to demonstrate he was an expert on the mechanical and theoretical operation of the DataMaster. *See Stuart v. Director of Revenue,* 761 S.W.2d 234, 239 (Mo.App. S.D.1988). Accordingly, the trial court erred in concluding there was a "lack of substantial evidence to find [Driver] had a[BAC] of .10% or more by weight due to the failure of evidence regarding the reliability of the 'override' procedure."

The BAC results were properly in evidence and established Driver had a BAC of at least .123 percent, which is above the statutory limit of .10 percent. Therefore, the trial court's judgment is against the weight of the evidence and should be reversed.

We reverse and remand the cause for the trial court to enter a judgment sustaining the Director's suspension of Driver's driving privileges.

GEORGE W. DRAPER III, Presiding Judge and MARY R. RUSSELL, Judge, Concur.