Trevor **VERNON**, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. 25932.

Missouri Court of Appeals,
Southern District,
En Banc.

July 29, 2004.

Motion for Rehearing or Transfer
Denied Aug. 20, 2004.

Application for Transfer Denied
Sept. 28, 2004.

906 

Kenneth M. Hayden, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shelly A. Kintzel, for respondent.

ROBERT S. BARNEY, Judge.

Appellant Trevor Vernon ("Driver") appeals from the trial court's judgment affirming the suspension of his driving privileges previously entered by Director of Revenue ("Director"). We reverse and remand.

Subsequent to a traffic stop conducted on June 16, 2002, Director suspended the driving privileges of Driver for driving a motor vehicle while having a blood alcohol content of 0.08 percent or more by weight, in violation of section 302.505.1, RSMo Cum.Supp.2002. An administrative hearing resulted in the suspension being upheld, and Driver filed a petition for a trial de novo, pursuant to section 302.535, RSMo 2000, in the Circuit Court of Laclede County. At the trial de novo, the following evidence was presented by Director.

At approximately 1:50 a.m. on June 16, 2002, Lebanon Police Officer Robert Buske executed a traffic stop after witnessing Driver's erratic operation of a motor vehicle. During the course of the traffic stop, Officer Buske observed Driver stumbling and swaying. After having Driver perform three field sobriety tests, which Driver failed in Officer Buske's opinion, Officer Buske placed Driver under arrest and transported him to the Lebanon Police Department.

At the Lebanon Police Department, Officer Buske informed Driver of his *Miranda*[1] rights and the implied consent law. Officer Buske then asked Driver to submit to a breath analysis test to determine his blood alcohol content ("BAC"); Driver agreed. Officer Buske testified that on June 16, 2002, he held a valid Type III Permit, which authorized him to operate the BAC Verifier instrument used. Officer Buske further stated that he followed the checklist on the Alcohol Incident Report in administering the breath analysis test to Driver. Officer Buske testified that Driver gave a valid breath sample; the instrument appeared to function properly; and the instrument printed out a test result.

When Director asked Officer Buske the results of the breath analysis test, Driver objected to the admission of the test results. Driver argued that a proper foundation had not been laid to show the instrument was functioning properly at the time of the test and that Director had not established the test was performed in accordance with Missouri Department of Health ("MDH") rules and regulations.

Specifically, Driver referenced 19 CSR 25–30.011 in support of his objection and requested permission to voir dire Officer Buske.[2] During this voir dire, Officer

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** In pertinent part, 19 CSR 25–30.011 provides:

Buske acknowledged that the purpose of the MDH rules and regulations is to ensure the reliability of the testing instruments used to test individuals' breath samples. Officer Buske agreed that the breath analysis test itself is composed of a blank test immediately before a subject's breath sample, a test of the subject's breath sample, and a blank test immediately after the subject's breath sample. Officer Buske further acknowledged that the purpose of the blank tests is to ensure the instrument does not give a false reading for alcohol when no alcohol is present in the machine. Specific to the instant matter, Officer Buske testified that the blank test conducted prior to Driver's breath sample read .000 and the blank test conducted after Driver's breath sample read .001.

Driver then objected to the admission of Driver's breath analysis test result, arguing that the results of the second blank test showed the machine had malfunctioned and that MDH rules and regulations required the immediate suspension of the use of a breath analyzing machine that is malfunctioning. *See* 19 CSR 25–30.011. During the proceedings, the trial court granted Driver a continuing objection to Officer Buske's testimony regarding the breath test results. Subject to that objection, Officer Buske testified that Driver's breath test revealed a BAC of .222.

Director also presented the testimony of Sergeant Randy Halstead of the Lebanon Police Department. It was stipulated that Sergeant Halstead held a valid Type II permit that authorized him to perform maintenance on the instrument and that he accurately reported his findings on a main-

tenance report dated June 11, 2002, which Director entered into evidence. The maintenance report included a calibration check of the instrument. Using a ".100 percent standard solution," the instrument recorded measurements of .103 percent, .104 percent, and .102 percent. These readings were within the range permitted by Maintenance Report Form 5 for a BAC Verifier. *See* 19 CSR 25–30.031, Form 5.

Under cross-examination, Sergeant Randy Halstead acknowledged that the purpose of the blank test is to ensure that the instrument is functioning properly at that time of the test and that during a blank test the instrument should give a reading of .000. Furthermore, he essentially related that any reading other than .000 "would indicate—If it indicated a—a percentage of any kind it would indicate that it was picking up some type of sample of alcohol in the chamber." Lastly, while Sergeant Halstead related that he would not be concerned over a very minor deviation, he did affirm that "[i]f the instrument is not functioning properly you take it out of service."

The trial court upheld the suspension of Driver's driving privileges. Driver now appeals.

In his first point on appeal, Driver argues the trial court erred in admitting the results of his breath analysis test because Director failed to prove the test was performed in accordance with MDH rules and regulations. In his second point Driver maintains the trial court erred in sustaining the suspension of his driving privileges by Director because, absent the breath

(5) Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 25–30.060.
\* \* \*
(B) An individual permitted to operate a breath analyzer shall—

1. Immediately suspend use of a breath analyzer that is not functioning properly. . . .

analysis test results that should not have been admitted, there was insufficient evidence to support the judgment. Because the points embody essentially the same argument, we will address the claims together.

"This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003).[3] When the evidence supporting revocation is "uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.*

Pursuant to section 302.505.1, RSMo Cum.Supp.2002, Director has the burden of establishing a *prima facie* case for suspension of a driver's license by presenting evidence that at the time of the arrest: (1) there was probable cause for arresting Driver for driving under the influence; and (2) that the alcohol concentration in Driver's blood was .08 percent or more. *Id.*[4] "The 'burden of proof' is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence." *Id.* (quoting § 302.535.1, RSMo 2000). When the director establishes a *prima facie* case, the evidence "creates a presumption that the driver was intoxicated." *Id.* "The driver is then entitled to rebut the director's *prima facie* case with evidence that his blood

alcohol content did not exceed the legal limit." *Id.* The rebuttal evidence should raise "a genuine issue of fact regarding the validity of the blood alcohol test results" and "should challenge the presumption of validity established by the director's *prima facie* case...." *Id.* at 546.

The results of a breath analysis test should be admitted once Director has established: (1) the test was performed following the rules and regulations promulgated by the MDH; (2) the test was performed by a person with a valid permit; and (3) the equipment and devices used were approved by the MDH. *Kennedy v. Director of Revenue*, 73 S.W.3d 85, 87 (Mo.App.2002).

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Kafoury v. Director of Revenue*, 983 S.W.2d 188, 189 (Mo.App. 1998). We will find an abuse of discretion only when the trial court's ruling is clearly against the logic of the circumstances, is so arbitrary and unreasonable as to shock the sense of justice, and shows a lack of careful consideration. *State v. Stottlemyre*, 35 S.W.3d 854, 858 (Mo.App.2001).

Driver concedes Director established Officer Buske had probable cause to arrest Driver. Therefore, the only matter before this Court is whether Director established by a preponderance of the evidence that Driver's blood alcohol level was at or above the legal limit. Driver argues the breath analysis test results should not have been admitted, and had the results been properly excluded, Director's evidence failed to

---

**3.** To the *extent only* that they misstate the evidentiary rebuttal standards, *Verdoorn* overruled the following cases cited in this opinion: *Kennedy v. Director of Revenue*, 73 S.W.3d 85, 87 (Mo.App.2002); *Kafoury v. Director of Revenue*, 983 S.W.2d 188, 189 (Mo.App.1998).

**4.** *Verdoorn* references the previous version of section 302.505, which set the legal limit at .10 percent of alcohol concentration in the blood. § 302.505.1, RSMo 2000. This subsection was amended to reduce the legal limit to .08 percent of alcohol concentration in the blood and took effect September 29, 2001. § 302.505.1, RSMo Cum.Supp.2002.

establish Driver's BAC was at or above the legal limit.

Director argues the trial court properly admitted the breath analysis test results because "Director met the necessary foundational requirements for admission of the test results and the instrument did not malfunction."

■■■■ It is our observation that nothing in the MDH rules or regulations allows for any variance in a blank test or establishes an acceptable deviation from the expected reading of .000 in a blank test. While regulations do allow for a certain range of variance during periodic *maintenance* checks, performed at intervals not to exceed 35 days, it is our view that the plain and ordinary meaning of the regulations do not purport to apply this same range of variance as in a maintenance check to a blank test performed in the course of an actual breath analysis test of a subject.[5] 19 CSR 25–30.031(3), Form 5.

Pursuant to 19 CSR 25–30.031, Form 5 requires that a maintenance check of a BAC Verifier includes a calibration check performed by running three tests using a "standard solution." 19 CSR 25–30.031, Form 5. In pertinent part, the form provides: "All three tests must be within ± 5% of the standard value and must have a spread of .005 or less." *Id.* The form then identifies two possible standard solutions that may be used during the maintenance check and provides a place for the inspecting officer to indicate which of the two standard solutions was used. *Id.*

One option contained in the form provides: "0.100% STANDARD—MUST READ BETWEEN 0.095% AND 0.105% INCLUSIVE." *Id.* Thus, when using the .100 percent standard solution, the form

provides that the reading may be .005 greater or lesser than the true value of the .100 percent standard solution during that maintenance check.

The second option provides: "0.040% STANDARD—MUST READ BETWEEN 0.038% AND 0.042% INCLUSIVE." 19 CSR 25–30.031. Accordingly, when using the .040 percent standard solution, the form provides that the reading may be .002 greater or lesser than the true value of the .040 percent standard solution during that maintenance check.

Director argues the form establishes an "acceptable variance" for the instrument and the .001 reading given during the blank test was within that acceptable variance. We disagree.

We determine that Form 5 only goes so far as to establish five percent of the standard solution as the allowable variance during that particular calibration check only. Therefore, when performing a calibration check using a .100 percent standard solution, the allowable variance during that calibration check alone is .005 (five percent of .100). Additionally, when performing a calibration check using a .040 percent standard solution, the allowable variance during that calibration check alone is .002 (five percent of .040).

■■■■ Employing the plain and ordinary meaning of the language used in the regulations, it is our view that the margin of variance allowed in Form 5, per 19 CSR 25–30.031, relates specifically to the use of a standard solution during periodic maintenance checks of the instrument only. In so concluding, we do not ignore Director's principal source of authority—*Reckner v. Fischer*, 121 S.W.3d 296 (Mo.App.2003).

---

**5.** "In interpreting statutes and rules, the same principles of construction are used." *Morton v. Missouri Air Conservation Comm'n*, 944

S.W.2d 231, 238 (Mo.App.1997). "Words used are given their plain and ordinary meaning." *Id.*

In *Reckner*, the Western District of this Court addressed a situation in which a breath-testing instrument gave readings of .004 when no alcohol was present and readings of .000 were expected. *Reckner*, 121 S.W.3d at 299–300. In analyzing the issue, the *Reckner* court looked to the forms relating to the maintenance checks discussed previously.[6] *Id.* at 302. The *Reckner* court concluded that, because the first option on the form allows for an acceptable variance of .005 during a maintenance check using a .100 percent standard solution, the form creates a "regulation-approved deviation of .005"—seemingly in all situations, including a blank test. *Id.* The *Reckner* court then set out that the instrument's occasional readings of .004 during blank tests, unrelated to any maintenance check, were within that approved deviation and, therefore, the instrument was not malfunctioning. *Id.*

As previously stated, we find this to be an erroneous interpretation of the MDH rules and regulations previously set out and, therefore, we do not find *Reckner* to be persuasive authority.

It should be kept in mind that a blank test performed before and after a subject's breath test and the calibration portion of the maintenance check are two separate and distinct processes. Each process is designed to establish some measure of reliability in the breath analyzer instrument.

It is our view that the ± 5% range of deviation applies only to the calibration portion of the maintenance process, where a standard solution with a known quantity of alcohol in aqueous solution is introduced to the instrument. A blank test, on the other hand, clearly does not introduce a predetermined and known solution containing alcohol in aqueous solution to the instrument during a subject's breath test. The blank test is designed to ensure that the instrument in question functions properly during a particular breath test. As Sergeant Halstead related, the blank test should not produce any result other than .000.[7] If the machine gives any other reading, the instrument is operating "outside the parameters established by the regulations." *Reckner*, 121 S.W.3d at 302.

 Under our case law, if there is a malfunction in the administration of the breath analysis test, "even a minor one, the test results [are] inadmissible." *Id.* In *Kennedy*, this Court held that the trial court correctly denied admission of a subject's breath analyzer test results when the instrument gave a status code reading that "system won't zero" after a blank test following the subject's breath sample and use of the instrument was not suspended. *Kennedy*, 73 S.W.3d at 86–87.

 It is our view that the reading of .001 during the second blank test indicated a malfunction in the breath analyzer and Officer Buske should have immediately suspended the use of the instrument. *See* 19 CSR 25–30.011(5)(B)1; *Kennedy*, 73 S.W.3d at 87. Accordingly, Driver's breath analysis test result was invalid, and the trial court abused its discretion when it received Driver's breath analysis test result into evidence. The trial court's judgment affirming the suspension of Driver's driving privileges is reversed. Director is ordered to reinstate Driver's driving privileges.

---

6. We note the applicable form in the present case is Form 5, which is used for maintenance of the BAC verifier instrument. The *Reckner* court considered Form 6, which is used for maintenance of the DataMaster instrument. *Reckner*, 121 S.W.3d at 302. In all respects relevant to this discussion, Forms 5 and 6 are identical.

7. Even assuming a five *percent* deviation, we observe that five percent of .000 is .000.

BATES, C.J., PARRISH, P.J.,
GARRISON, P.J., PREWITT, SHRUM
and RAHMEYER, JJ., concur.