**Robert SPINNER, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. 26542.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 21, 2005.

Daniel T. Moore, Moore, Walsh & Albright, LLP, Poplar Bluff, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Asst. Atty. Gen., Jefferson City, for respondent.

Before BATES, C.J., SHRUM, J. and BARNEY, J.

PER CURIAM.

Appellant Robert Spinner ("Driver") appeals from the trial court's judgment affirming the suspension of his driving privi-

leges by the Director of Revenue ("the Director").

Subsequent to a traffic stop conducted on January 21, 2003, the Director suspended the driving privileges of Driver for driving a motor vehicle while having a blood alcohol content of 0.087 percent or more by weight. § 302.505.1, RSMo Cum.Supp. 2002 Driver requested and was granted an administrative hearing pursuant to section 302.530.1, at which time the suspension was upheld.[1] He thereafter sought a trial *de novo* in the Circuit Court of Howell County, Missouri, as permitted by section 302.535.1. The circuit court entered judgment upholding the Director's determination. Driver now brings one point on appeal, which is discussed more fully below.

"This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). "'In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge.'" *Martin v. Dir. of Revenue*, 142 S.W.3d 851, 857 (Mo.App.2004) (quoting *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App.1997)). "Such deference is not limited to the issue of credibility of witnesses, but also to the conclusions of the trial court." *Id.* (quoting *Hawk*, 943 S.W.2d at 20).

Pursuant to section 302.505.1, RSMo Cum.Supp. 2002, Director has the burden of establishing a *prima facie* case for suspension of a driver's license by presenting evidence that at the time of the arrest: (1) there was probable cause for arresting Driver for driving under the influence; and (2) that the alcohol concentration in Driver's blood was .08 percent or more [by weight].

*Vernon v. Dir. of Revenue*, 142 S.W.3d 905, 909 (Mo.App.2004). "'The 'burden of proof' is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence." *Verdoorn*, 119 S.W.3d at 545 (quoting § 302.535.1). "When the director establishes a *prima facie* case, the evidence 'creates a presumption that the driver was intoxicated.'" *Vernon*, 142 S.W.3d at 909 (quoting *Verdoorn*, 119 S.W.3d at 545). "'The driver is then entitled to rebut the director's *prima facie* case with evidence that his blood alcohol content did not exceed the legal limit.'" *Verdoorn*, 119 S.W.3d at 545. Rebuttal evidence should raise "a genuine issue of fact regarding the validity of the blood alcohol test results ... [and] challenge the presumption of validity established by the director's *prima facie* case...." *Id.* at 546.

The results of a breath analysis test should be admitted once the Director has established: (1) the test was performed following the rules and regulations promulgated by the Missouri Department of Health ("MDH"); (2) the test was performed by a person with a valid permit; and, (3) the equipment and devices used were approved by the MDH. *Stuhr v. Dir. of Revenue*, 766 S.W.2d 446, 449 (Mo. banc 1989). "A claim that the test results are invalid avails only where there is some evidence of a malfunction despite adherence to correct procedure in the administration of the test." *Young v. Dir. of Revenue*, 835 S.W.2d 332, 335 (Mo.App. 1992).

The record shows that the only issue raised before the circuit court in the trial *de novo* was the reliability of the breath

---

1. Unless otherwise noted, statutory references are to RSMo 2000.

test results. "Accordingly, we need not address the probable cause requirement of section 302.505," in setting out the record. *Bradford v. Dir. of Revenue*, 72 S.W.3d 611, 612–13 (Mo.App.2002).

Viewing " 'the evidence in the light most favorable to the trial court's judgment ... [and] deem[ing] all facts to have been found in accordance with the result reached by the trial court,' " *Martin*, 142 S.W.3d at 856 (quoting *Hawk*, 943 S.W.2d at 20), the record reveals that the Director presented certified documents showing that Trooper J.S. Brumble ("Brumble"), a Type III permit holder, administered an analysis of Driver's breath using a Data-Master breath analyzer, which is approved for use by 19 CSR 25–30.060(3). According to the narrative attached to the Alcohol Influence Report ("AIR") received into evidence, Brumble noted that Driver:

> had difficulty giving an adequate sample. As [Driver] attempted for several seconds to give an adequate sample of breath to test and the Datamaster still indicating that it was not receiving enough breath to test, I pressed the sample override button, which revealed a [Blood Alcohol ("B.A.C.") ] level of .087 [percent].... [2]

The Director also presented the testimony of Thomas Poindexter ("Poindexter"), a police officer of the City of Mountain View, Missouri, and a Type II permit holder.[3] Poindexter opined that he had been instructed by personnel from the Department of Health, that the "no vol., or no volume button," also known as a "sample control override" key, is used in those situations when an "officer feels that he has an individual who has given a fair and accurate breath sample, but for health reasons cannot give a complete, accurate sample." He acknowledged that he was not aware of any prohibition within the MDH regulations against the use of the sample control override key and he stated that once the key is pressed, the machine "records a breath sample that the subject has delivered into the breath tube and records what the blood alcohol content would be." In other words, once the "no vol" button is pressed, "[y]ou're simply going ahead and taking the breath sample that the person has given." Furthermore, he set out that you "would be testing lower lung, not deep." Additionally, Poindexter stated that "you would be getting a less of a deep lung sample, but you would be getting a deep-lung alveolar lung sample, which is the bottom part of the lung. So you would not be getting as high a reading, you'd be getting a lower reading on the subject's content." On cross-examination, Poindexter acknowledged that there is no place or "box" on Form 7, the checklist form for use on the DataMaster breathalyzer machine, which authorizes the use of the sample override button. *See* 19 CSR 25–30, Form 7.

▇ In his sole point on appeal, Driver challenges the admissibility of his breath test result on the grounds that the "sample control override" feature of the DataMaster breath analyzing machine was used to take his breath sample, but that such a procedure is not provided for by the rules

---

**2.** Driver's account differed from that of Brumble. Driver testified he had no difficulty submitting a full breath sample and that Brumble never indicated to him to blow harder or that he wasn't blowing correctly.

**3.** According to Poindexter, a Type II permit is a "maintenance license ... [which] entitles [the holder] to do service on the DataMaster[ ]

and make sure it is functioning correctly, minor maintenance, also to instruct law enforcement officers so they can become Type III operators." Whereas, a Type III permit holder is authorized to "administer tests to subjects arrested for being under the influence."

and regulations the MDH set up for this purpose. Driver argues that section 577.020.3 specifically provides that in order for a chemical analysis of a person's breath to be considered valid, *"it shall be performed . . . according to methods approved by the State Department of Health."* In support of his contention, Driver cites to *Potts v. State,* 22 S.W.3d 226, 231 (Mo.App. 2000), for the proposition that "absolute and literal compliance with the regulations approved by the State Department of Health governing methods or devises for testing breathalyzer results must be followed."

The Director concedes that 19 CSR 25–30.060 does not provide for the use of the sample control override feature. The Director contends, however, that the foregoing regulation "does not prohibit its use, either, and test results have otherwise been deemed sufficient to support a license suspension when obtained by utilizing this feature." In particular, the Director cites to *Bradford v. Dir. of Revenue,* 72 S.W.3d 611 (Mo.App.2002), as an example of a situation where the use of the "NV" or "No Volume" button by a Type II permit holder was approved. As Director shows, the court in *Bradford* tacitly approved of the use of the sample control override key in a situation where the driver would "blow and then stop and then blow and then stop which caused the first test to invalidate the machine and instrument and then invalidate the sample." *Bradford,* 72 S.W.3d at 612. The Court went on to observe that the "BAC results were properly in evidence and established [that the *Bradford* ] Driver had a BAC . . . above the statutory limit . . . ." *Id.* at 614. *Bradford* stands as persuasive authority and controls the disposition of this appeal.

Here, without objection, Poindexter testified as a Type II permit holder and laid the necessary foundation to demonstrate he was an expert on the mechanical and pertinent theoretical operation of the DataMaster breath analyzer. *See id.* at 614. Furthermore, as Brumble noted in the AIR, Driver was having difficulty in giving an adequate breath sample. The record shows that Brumble followed the proper procedure when administering the test to Driver, which revealed that Driver's BAC was 0.087 percent by weight. He also opined that by using the no volume button the operator would actually obtain a *lower* reading on the read out.

We note that there is no requirement that the Director prove exactly what Driver's BAC was; rather, the Director is required to show "the alcohol concentration in [Driver's] blood, breath, or urine was eight-hundredths of one percent or more by weight. . . ." § 302.505.1, RSMo Cum. Supp. 2002; *see also Bradford,* 72 S.W.3d at 614. Given the particular circumstances of this case, we are not persuaded that Driver was prejudiced by use of the no volume button. We cannot say that the trial court erred in accepting the efficacy and scientific reliability attendant to the use of the sample control override function of the DataMaster breath analyzer. *See Bradford,* 72 S.W.3d at 614. Driver's point is denied.

The judgment is affirmed.