**Linda S. BOZARTH, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. ED 84813.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

July 12, 2005.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Alice M. Wortman, Jefferson City, MO, for appellant.

Branson L. Wood III, Hannibal, MO, for respondent.

NANNETTE A. BAKER, Judge.

Director of Revenue ("Director") appeals from a judgment of the trial court reversing the driver's license suspension of Linda S. Bozarth ("Bozarth") from a charge of driving while intoxicated. We find no error and affirm.

## Background

Bozarth was stopped on January 8, 2004, for driving with expired tags. She was pulled over by Sergeant Greg Leftwich ("Sgt. Leftwich") of the Missouri State Highway Patrol. Sgt. Leftwich testified that as he approached Bozarth, he observed signs of possible intoxication, including bloodshot eyes, slurred speech and the odor of alcohol. After requesting that Bozarth step out of her vehicle, Sgt. Leftwich conducted four field sobriety tests: an alphabet test, a backwards counting test, a horizontal gaze nystagmus ("HGN") test and a portable breath test ("PBT"). Based on the results of these tests and his experience, Sgt. Leftwich arrested Bozarth for driving while intoxicated.

Sgt. Leftwich took Bozarth to the Marion County Sheriff's Department, read her the implied consent law and administered a breath test with a DataMaster instrument. Before administering the breath test, Sgt. Leftwich observed Bozarth for fifteen minutes. Bozarth removed her false teeth, did not smoke or vomit during that time, and did not put anything in her mouth. Sgt. Leftwich testified that on January 8, 2004 he held a valid Type III permit, which authorized him to operate the DataMaster instrument.

The first two times Sgt. Leftwich attempted to administer the breath test, the test produced invalid readings. Bozarth was unable to blow enough air into the machine to register a complete sample. On Bozarth's third attempt, Sgt. Leftwich used the manual override feature, a no volume button ("NV button") to obtain a blood alcohol concentration ("BAC") reading. The reading was greater than .08%. Sgt. Leftwich testified that use of the NV button produces artificially lower results than a reading not using the override button.

Bozarth's driving privileges were suspended pursuant to Section 302.505,[1] for driving while intoxicated. Bozarth filed a Petition for Trial de novo in the Circuit Court of Marion County, and filed a Motion in Limine to exclude the results of the breath test.

### Standard of Review

When a trial court reinstates a driver's driving license after it has been revoked or suspended, the appellate court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Rundquist v. Dir. of Revenue*, 62 S.W.3d 643, 645 (Mo.App. E.D.2001). We view the evidence and all necessary inferences based on the evidence in the light most favorable to the judgment. *Hansen v. Dir. of Revenue*, 22 S.W.3d 770, 772 (Mo.App. E.D.2000). In a driver's license revocation proceeding, the trial court is accorded wide discretion on factual issues and the conclusions that follow. *Id.*

### Discussion

Section 302.505.1, permits the department of revenue to suspend or revoke the driver's license of any person arrested upon probable cause of driving while intoxicated. An aggrieved driver can seek a trial de novo. *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). At the trial, the director has the burden of establishing a prima facie case for suspension of a driver's license by presenting evidence that at the time of the arrest: (1) there was probable cause for arresting driver for driving under the influence; and (2) that the alcohol concentration in driver's blood was .08 percent or more. *Vernon v. Dir. of Revenue*, 142 S.W.3d 905, 909 (Mo.App. S.D.2004). The burden of proof is on the director of revenue to establish grounds for the suspension or revocation by a preponderance of the evidence. *Id.*

Once the director makes a prima facie showing of probable cause of driving while intoxicated, the driver is entitled to present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results. *Verdoorn*, 119 S.W.3d at 546. The rebuttal evidence should challenge the presumption of validity established by the director's prima facie case; but the driver's burden is one of production—not persuasion. *Id.* The director retains the burden of proof throughout the proceeding. *Id.*

In her sole point on appeal, Director claims that the trial court erred in setting aside the suspension of Bozarth's driving privileges. Director argues that she made a prima facie case, showing by a preponderance of the evidence that Sgt. Leftwich had probable cause to arrest Bozarth for driving while intoxicated, and that at the time of arrest, Bozarth had a BAC of greater than .08%. Therefore, according to Director, the trial court erred when it entered judgment for Bozarth, finding that the Director did not meet her prima facie burden when she failed to prove by a preponderance of the evidence that Bozarth's BAC was more than .08%. Director also argues that Bozarth's Motion in Limine did not preserve her objection to the results of the BAC for appeal.

Addressing the second prong of the requirements for a prima facie case, we consider the trial court's decision not to allow the breath test to be admitted. Director cites *Bradford v. Dir. of Revenue* for the proposition that the arresting officer's use of the manual override NV but-

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

ton does not invalidate the BAC test, and thus, the trial court erred in excluding this evidence. 72 S.W.3d 611 (Mo.App. E.D. 2002). At first blush, *Bradford* appears to be similar to the case before us. However, in *Bradford* the driver did not object to the admission of the BAC test. *Id.* at 613. When a breathalyzer test is used to establish a driver's blood alcohol content, foundational prerequisites to admission must be met. *Dale v. Dir. of Revenue,* 40 S.W.3d 396, 399 (Mo.App. E.D.2001). To lay this foundation, Director must establish three elements: 1) the test was performed by following approved techniques and methods of the Division of Health, 2) the operator held a valid permit, and 3) the equipment and devices were approved by the Division. *Id.* The foundational prerequisites are unnecessary where the test result is admitted in evidence without objection. *Id.* The requirement of proof of compliance with the regulation only becomes an issue, however, if a proper, timely objection is made to the admission of the blood alcohol analysis. *Krieger v. Dir. of Revenue,* 14 S.W.3d 697, 701 (Mo.App. E.D.2000). Because there was no objection made in *Bradford,* the Director did not have to establish the foundational prerequisites to admission.

▉ Director claims that Bozarth failed to properly object to the introduction of the test results and therefore the results should have been admitted. Prior to trial, Bozarth filed a Motion in Limine requesting that the court exclude all evidence of the breath test. In the motion, Bozarth asserted that the foundation requirements for admissibility of the breathalyzer had not been met. In addition, the motion stated that the Director failed to meet his [sic] burden that the breathalyzer test was administered properly. The record indicates that Bozarth requested that the Motion in Limine be taken with the

case to preserve the objection and the Director agreed. Furthermore, Bozarth reiterated her objection to the introduction of the test results during the testimony of Sergeant Leftwich.

Director asserts that since Bozarth did not make a motion to strike following her objection to the BAC test results, the question of the test's admissibility is not reviewable. Relying on *State v. Bartholomew,* Director argues that when a party requests that an objection be taken with the case, this alone is not enough to preserve the objection for appeal; the party must also later restate the objection and make a motion to strike. 829 S.W.2d 50 (Mo.App.W.D. 1992). However, in *Bartholomew,* the results of the breathalyzer test had already been admitted. *Id.* at 53. In this case, the results of the breathalyzer test were never admitted. It was, therefore, unnecessary for Bozarth to make a motion to strike. The trial court found that the objection was proper, and we agree.

▉ Since Bozarth made a timely and proper objection to the admission of the BAC test, the Director had to meet the foundational prerequisites in order to have the breath test admitted into evidence. Two of the foundational elements were established during trial, however the requirement that the test was performed following approved techniques and methods of the Division of Health is at issue.

This case is remarkably similar to *Vernon,* 142 S.W.3d 905. In *Vernon,* when the Type III Permit holder administered the breathalyzer test to the driver, the blank test taken immediately after the driver's sample yielded a result of .001 rather than the expected .000. *Id.* at 908. The trial court admitted the results of the breathalyzer test over objection by the driver that Director had failed to show that the test was performed in accordance

with the Missouri Department of Health ("MDH") rules and regulations. *Id.* at 907. The Southern District found that nothing in the MDH rules or regulations allows for any variance in a blank test, or established an acceptable deviation from the expected reading of .000 in a blank test. *Id.* at 910. Thus, the court held that the results of the breathalyzer test should not have been admitted, and reversed the trial court's judgment, ordering the driver's driving privileges to be reinstated. *Id.* at 911.

Bozarth contends that Director failed to meet the foundational requirements in that the test did not follow approved techniques and methods of the Division of Health. Pursuant to 19 CSR 25–30, form 7, the MDH operational checklist for the Data-Master unit has seven steps:

1. Subject observed for 15 minutes by [operator]. No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period.
2. Assure that the power switch is ON.
3. Press RUN button.
4. When display requests INSERT TICKET, insert evidence ticket.
5. Enter subject and officer information.
6. When display reads PLEASE BLOW and gives audible beep, take subject's breath sample.
7. When printer has completed printing out test result, remove ticket from printer. Attach printout to this report.

Both Sgt. Leftwich and Trooper Shane Stone ("Tr. Stone"), of the Missouri State Highway Patrol testified that the use of the NV button to obtain a valid sample result is not included in the instructions on administration of the DataMaster breathalyzer. When questioned by Bozarth's attorney, Sgt. Leftwich answered that there was nothing in the checklist about hitting the NV button, and agreed that using the button was a step he added in between step six and step seven on the checklist.

The trial court found that neither Sgt. Leftwich nor Tr. Stone were generally knowledgeable about the invalid sample result except by referring to the operator and supervisor's manuals. The trial court also found that the testimony of Sgt. Leftwich and Tr. Stone was not credible evidence that the test was performed by techniques and methods approved by the MDH. Consequently, the trial court found that the Director had failed to prove that the test was performed in accordance with techniques and methods approved by the Department of Revenue [sic],[2] and held the breathalyzer test results to be inadmissible. We agree with the trial court that the Director failed to meet her burden of proof.

In a very recent case, the Southern District addressed the issue of whether the use of the NV button invalidates the results of the BAC. *Spinner v. Dir. of Revenue*, 165 S.W.3d 228 (Mo.App. S.D. 2005). The driver in *Spinner* had his driver's license suspended for driving while intoxicated. *Id.* at 229–30. After a trial de novo in the Circuit Court of Howell County, the trial court upheld the suspension of driver's license, based on the BAC test. *Id.* The driver had difficulty giving an adequate sample, and the Type III operator pressed the NV button to override the test. *Id.* at 230–32. The trial court held

**2.** Although the judgment reads Department of Revenue, we assume that the trial court meant Department of Health.

that the use of the NV button did not invalidate the sample, and that the test was reliable. *Id.* The Southern District affirmed the judgment of the trial court, holding that the driver was not prejudiced by the use of the NV button. *Id.* at 232.

The case at hand is distinguishable from *Spinner* in several ways. In *Spinner*, the Southern District upheld the trial court's decision to suspend the driver's driving privileges. *Id.* During the trial, Type II permit holder, Thomas Poindexter ("Poindexter"), opined that he had been instructed by personnel from the Department of Health that the NV button was to be used in situations when an officer feels that the individual has given a fair and accurate breath sample, albeit not a complete one due to health reasons. *Id.* at 230–32. He also testified that he was not aware of any prohibition within the MDH regulations against the use of the NV button. *Id.* Further, Poindexter explained that using the NV button produces a lower reading on the subject's alcohol content, because it measures less of a deep lung sample. *Id.*

In the present case, the trial court found the testimony of both Sgt. Leftwich and Tr. Stone not to be credible evidence that Bozarth's BAC test was performed according to the techniques and methods approved by the MDH. The court also found that neither man was very knowledgeable about the invalid sample result. Sgt. Leftwich and Tr. Stone each testified that they had been trained to use the NV button when a subject was not able to provide a complete sample, but neither testified by whom they had been trained, or that the MDH had ever instructed them on the use of the NV button. Neither man knew why a breath sample taken with use of the NV button would produce a lower reading than a complete sample. According the trial court wide discretion on its findings of fact

and conclusions of law, we are not persuaded that the trial court should have admitted the results of Bozarth's BAC test.

Without the result of the breathalyzer test, the Director is unable to establish a prima facie showing of Bozarth's driving while intoxicated. Thus, we need not address the issue of probable cause.

Judgment affirmed.

GEORGE W. DRAPER III, C.J., and GLENN A. NORTON, J., concur.